458 So.2d 1275 (1984)
Joseph CARONA, Jr.
v.
STATE FARM INSURANCE COMPANY.
Paul ROCHE
v.
CUMIS INSURANCE SOCIETY, INC.
Anthony J. DALMADO, Jr.
v.
CUMIS INSURANCE SOCIETY, INC.
Lois E. Halter, Wife of and Claude CANCIENNE
v.
Rodrigo M. SAAVERDRA, the Fidelity and Casualty Company of New York and State Farm Insurance Company.
Mary H. Decedue, Wife of/and Charles DECEDUE
v.
GOVERNMENT EMPLOYEES INSURANCE COMPANY.
Nos. 84-C-0287, 84-C-0279, 84-C-0234, 82-C-0274 and 84-C-0092.
Supreme Court of Louisiana.
November 26, 1984.
Concurring Opinion December 3, 1984.
Rehearing Denied January 4, 1985.
*1276 Gregory J. Avery, Orrill & Avery, New Orleans, for plaintiff-applicant in No. 84-C-0287.
Daniel R. Hynes, Porteous, Hainkel, Johnson & Sarpy, New Orleans, for defendants-respondents in Nos. 84-C-0287, 84-C-0234 and 84-C-0274.
C. Gordon Johnson, Jr., Porteous, Hainkel, Johnson & Sarpy, New Orleans, for defendant-respondent in No. 84-C-0287 and No. 84-C-0274.
Dennis Jude Dannel, New Orleans, for plaintiff-applicant in No. 84-C-0279.
Robert E. Kerrigan, Jr., Philip D. Lorio, III, Deutsch, Kerrigan & Stiles, New Orleans, for defendant-respondent in No. 84-C-0279.
Raymond C. Burkart, Jr., New Orleans, for plaintiff-applicant in No. 84-C-0234.
Henry Leon Sarpy, Porteous, Hainkel, Johnson & Sarpy, New Orleans, for defendant-respondent in No. 84-C-0234.
Gary T. Breedlove, Metairie, Steven B. Witman, Gretna, for plaintiffs-applicants in No. 84-C-0274.
James S. Thompson, Porteous, Hainkel, Johnson & Sarpy, New Orleans, for defendant-respondent in No. 84-C-0274.
William W. Hall, Hall, Lentini, Mouledoux & Wimberly, Metairie, for plaintiff-applicant in No. 84-C-0092.
Carmelite M. Bertau, Hammett, Leake & Hammett, New Orleans, for defendant-respondent in No. 84-C-0092.
*1277 DENNIS, Justice.
We are called upon to decide whether a personal injury claimant who settles with an uninsured or underinsured tortfeasor renounces his rights against his uninsured motorist (UM) insurer if he fails to expressly reserve them. In each of these consolidated cases a summary judgment was rendered or an exception of res judicata was sustained by the trial court in favor of a UM carrier, and affirmed by an appeals court, because the UM insurer's insured made such a settlement without express reservation of his rights against other codebtors in solido. 444 So.2d 763 and 441 So.2d 72. Having granted certiorari, we now reverse. The rule of Civil Code article 2203(1870), according to which an obligee who remits a debt in favor of one solidary obligor without expressly reserving his right against others is deemed to have forfeited the entire obligation, does not apply to a personal injury claimant's right to recover from his UM insurer. Article 2203, which is an exception to the well settled general rule that no one is presumed to have renounced his rights against others unless it clearly appears that he intended to do so, has been superseded in part by the UM statute which preserves the insured's ability to exercise his rights of recovery after a settlement with one of his codebtors in solido. La.R.S. 22:1406(D)(4).
The tortfeasor and the uninsured motorist carrier are codebtors in solido. C.C. arts. 2091-94; C.C. art. 2315; La.R.S. 22:1406(D); Hoefly v. Government Employees Ins. Co., 418 So.2d 575 (La.1982). See also Narcise v. Illinois Central Gulf Railroad Co., 427 So.2d 1192 (La.1983); Johnson v. Fireman's Fund Ins. Co., 425 So.2d 224 (La.1982).
Civil Code article 2203 (1870) provides:
The remission or conventional discharge in favor of one of the codebtors in solido, discharges all the others, unless the creditor has expressly reserved his right against the latter.
In the latter case, he can not claim the debt without making a deduction of the part of him to whom he has made the remission.
The rule of Article 2203 is contrary to the general well settled precept that no one is presumed to have renounced his rights against others unless it clearly appears that he intended to do so. See Roy v. U.S.A.A. Casualty Ins. Co., 453 So.2d 564 (La.1984); Honeycutt v. Town of Boyce, 341 So.2d 327 (La.1976); Williams v. Desoto Bank & Trust Co., 189 La.245, 179 So. 303 (1938); Landry v. New Orleans Public Service, 177 La.105, 147 So. 698 (1933); Cusimano v. Ferrara, 170 La.1044, 129 So. 630 (1930); Micaud v. Johnson, Man. Unrep.Cas., 327 (La.1880). Louisiana and French doctrine have unanimously criticized the rule of article 2203. See M.M. Harrison, Remission in the Civil Law, 2 La.L.Rev. 365, 371-72 (1940); Note, 13 Tul. La.L.Rev. 642, 644 (1939). French commentators criticizing the rule are collected in 1984 La.Acts, No. 331, § 1, article 1803, comment (e): 13 Baudry-Lacantinerie et Barde, Traite theorique et pratique de droit civil Des obligations 110-111 (2nd ed. 1905); 5 Colmet de Santerre, Manuel elementaire de droit civil, No. 144 bis-I (4th ed. 1901); 26 Demolombe, Cours de code Napoleon, No. 396 (1877); 17 Laurent, Principes de droit civil francais, No. 340 (1876); 8 Hue, Commentaire theorique et pratique du code civil, No. 138 (1894); 2 Pothier, Oeuvres de Pothier, No. 275 (Bugnet ed 1861).
No doubt in response to this criticism, the express reservation requirement of article 2203 has been abolished by the legislature in its revision of Louisiana obligations law. 1984 La.Acts, No. 331. In place of article 2203 (1870) the Act creates new article 1803 (effective January 1, 1985) which provides:
Remission of debt by the obligee in favor of one obligor, or a transaction or compromise between the obligee and one obligor, benefits the other solidary obligors in the amount of the portion of that obligor.
Surrender to one solidary obligor of the instrument evidencing the obligation gives rise to a presumption that the remission *1278 of debt was intended for the benefit of all the solidary obligors.
The comments to the new article confirm that the express reservation requirement has been rejected. 1984 La.Acts, No. 331, § 1, art. 1803, Comment (e).
New article 1803 does not apply to the present cases which arose before its effective date. The reasons for the change in the law are relevant, however, to our determination that article 2203 is incompatible with the aim of the uninsured motorist insurance statute.
As Dean Harrison stated, Article 2203 works an inequity
... when the creditor desires to hold the other codebtors, but fails through ignorance of a technical rule to make the reservation required. The necessity of such a stipulation would not be likely to occur to the average layman; so any complete discharge of one solidary debtor granted without legal advice would probably result in a release of the other codebtors from their just obligation through an artificial presumption of the law. This has been obvious in many of the cases decided under Article 2203 by the courts of Louisiana.
... If this presumption was incorporated in article 2203 only to avoid difficulty in determining intention, the redactors were needlessly cautious. The subjective intention of the creditor need not be found; his objective intention, as manifested by the situation of the parties or by the creditor's words or actions, would supply an adequate and reasonably accurate test. In the absence of any such manifestation, the usual rule would be applied, that no one is ever presumed to have relinquished a right, so that the other codebtors could not sustain their burden of proving the discharge. Since the creditor who intends to discharge all of the solidary debtors almost invariably makes such intention clear, this solution would rarely work hardship; and the inequities which have abounded under the present law would be obviated. M.M. Harrison, Remission in the Civil Law, 2 La.L.Rev. 365, 371-72 (1940) (Footnotes omitted).
The object of the UM statute is to promote full recovery for damages by automobile accident victims. Bond v. Commercial Union Assur. Co., 407 So.2d 401 (La. 1981). The strength of this policy is demonstrated by the requirements that any automobile liability insurance issued in Louisiana must include uninsured motorist coverage unless it is rejected by the insured, La.R.S. 22:1406(D)(1)(a), that the principal elements of UM coverage are prescribed by law, La.R.S. 22:1406(D), and by our cases holding that any clause in a UM insurance contract in derogation of the mandatory requirements set forth in the statute is invalid insofar as it conflicts with the statute. Bond, supra, 407 So.2d at 409-10; Block v. Reliance Ins. Co., 433 So.2d 1040 (La.1983); Breaux v. Government Emp. Ins. Co., 369 So.2d 1335 (La. 1979); Seaton v. Kelly, 339 So.2d 731 (La. 1976); Deane v. McGee, 261 La.686, 260 So.2d 669 (1972).
The technical rule of article 2203 serves as a barrier to full recovery by innocent accident victims, and thereby conflicts with the basic object of the UM legislation. It is inevitable, perhaps, that a rule criticized by Bandry-Lacontinerie, Borde, Colmet de Santerre, Demalombe, Laurent, and Huc as being inexplicable before the turn of the century should clash hopelessly with social legislation necessitated by the twentieth century automotive age. See 1984 La. Acts, No. 331 § 1, article 1803, Comment (e).
More specifically, article 2203 conflicts with and has been superseded by La.R.S. 1406(D)(4), of the UM statute, which provides:
In the event of payment to any person under the coverage required by this Section and subject to the terms and conditions of such coverage, the insurer making such payment shall, to the extent thereof, be entitled to the proceeds of any settlement or judgment resulting from the exercise of any rights of recovery of such person against any person *1279 or organization legally responsible for the bodily injury for which such payment is made.... (emphasis added)
This statutory provision, and Civil Code article 2162, make it clear that when the UM insurer pays part of the damages to which the insured is entitled from a tortfeasor and receives a release from the insured, the insured is nevertheless entitled to exercise his right for the balance of the partially paid claim in preference to the insurer, even though the insurer and the tortfeasor are solidary obligors. See Bond, supra; Southern Farm Bureau Casualty Ins. Co. v. Sonnier, 406 So.2d 178 (La.1981). These statutory provisions clearly imply that the insured's right to recover from the UM insurer is afforded similar protection when he first receives payment for part of his damages from the tortfeasor. Any other interpretation would be unreasonable and would cause injuries of innocent, insured motorists to go unremedied, thus frustrating the legislative aim of the UM statute. Since full recovery is the goal of the legislation and because the tortfeasor and the UM carrier are codebtors in solido, we infer that a victim merely by his release of the tortfeasor does not forfeit any right against his UM carrier.
For the foregoing reasons we conclude that when an automobile accident victim settles with his tortfeasor his claim against his UM insurer is not discharged merely because he does not expressly reserve his right against the latter in accordance with Civil Code article 2203. The judgments of the courts of appeal affirming the trial court judgments and order dismissing the plaintiffs' actions against their UM insurers are reversed. The cases are remanded to their respective district courts for further proceedings.[*]
REVERSED AND REMANDED.
DIXON, C.J., concurs.
CALOGERO, J., joins the opinion and assigns additional reasons.
MARCUS and BLANCHE, JJ., concur and assign reasons.
MARCUS, Justice (concurring).
Under the authority of Hoefly v. Government Employees Insurance Company, 418 So.2d 575 (La.1982), the tortfeasor and the U/M carrier are solidary obligors. La. Civ.Code art. 2203 would require that settlement with the tortfeasor without a reservation of rights would act as a release of the U/M carrier who is solidarily liable with the tortfeasor. I disagree that La. R.S. 1406(D)(4) was intended to supersede art. 2203. However, I am of the opinion that a tortfeasor and a U/M carrier are not "obliged to the same thing" and thus are *1280 not solidarily obligors. (See my dissent in Hoefly, supra.) Accordingly, I concur in the result reached by the majority.
BLANCHE, Justice (concurring in the result only).
In Hoefly v. GEICO, 418 So.2d 575 (La. 1982), this Court salvaged a particular plaintiff's claim from prescription by invoking the doctrine of solidarity whereby U/M insurers were deemed solidarily liable with tortfeasors. In so holding, this Court did not consider what other, less palatable effects the application of the Civil Code provisions of solidarity would have upon future claimants and insurers.
In the instant consolidated cases, the court has been confronted with an effect of solidaritynamely, that a settlement with one solidary obligor absent an express reservation discharges the othersin the context of the personal injury plaintiff and his U/M insurer. Suddenly, the rigid application of C.C. art. 2203 is no longer desirable, insofar as it would bar plaintiffs' claims against their uninsured motorist insurer, when one must consider that plaintiffs had expressly contracted for such coverage.
Undeniably, such a result would have been senseless, for the simple reason that no solidary relationship exists between a tortfeasor and the claimant's U/M carrier. The majority opinion chooses not to acknowledge this, however, and as a result must justify disregarding an effect of solidarity which is expressly provided in the Civil Code.
The majority begins its analysis of the problem posed by the instant cases with the simple assertion that Hoefly is the law, and that the question of whether a U/M carrier is liable in solido with the tortfeasor has been settled. Although a majority of this Court has apparently conceded the issue, this writer finds the existence of an insolido relationship untenable.
Under the Civil Code, obligations may be joint, several or in solido. La.C.C. art. 2077. As Planiol observed, "solidarity is an exception to the general rule whereby debts are divided between conjoint obligors" 2 M. Planiol, Civil Law Treatise, pt. 1 no. 735, (11th Ed.1959). For this reason, obligations in solido are not presumed; rather they must be expressly stipulated. The only time this rule does not apply are instances where an obligation in solido takes place by virtue of some provision of law. La.C.C. art. 2093.
Insolido liability arising from a provision of law may occur in two ways: when expressly stipulated by statute, or when the obligation on the part of the debtors satisfies the requirements for solidarity contained in Civil Code article 2091. Joint tortfeasors are liable in solido to the victim by virtue of the express provision of La. C.C. art. 2324. Likewise, the tortfeasor and his liability insurer are also solidarily liable to the victim. The basis for this liability has been attributed to both the express language of La.R.S. 22:655 (the Direct Action Statute) and the compliance of the tortfeasor/insurer relationship with the terms of article 2091. Sewell v. Newton, 152 So. 389 (Orl.App.1934), Pearson v. Hartford Accident & Indemnity Company, 281 So.2d 724 (La.1973). The latter view was expressed in Hidalgo v. Dupuy, 122 So.2d 639 (La.App. 1st Cir.1960) in the following manner:
"By the terms of the insuring agreement, both the insurer and its insured are obligated for the same debt (namely the insured's tort liability covered by the policy), and payment made by either of them satisfied the liability of the other, so that within the statutory definition they are solidary obligors for the payment of the damages for which the insured is legally liable within the coverage of the insurance policy." 122 So.2d at 643.
As will be demonstrated below, the former view is correct: i.e., the insolido relationship between the tortfeasor and liability insurer is one created by R.S. 22:655. That statute, which allows the plaintiff to proceed directly against the insurer without first filing suit against the tortfeasor, states in pertinent part:

*1281 "The injured person or his or her survivors or heirs hereinabove referred to, at their option, shall have a right of direct action against the insurer within the terms and limits of the policy; and such action may be brought against the insurer alone or against both the insured and insurer jointly and insolido ..."
On the other hand, the statute imposing the duty on insurers to provide U/M coverage, La.R.S. 22:1406, does not expressly (or implicitly) impose insolido liability with the tortfeasor. Accordingly, if an obligation in solido exists between the U/M carrier and the tortfeasor, the obligation imposed on the insurer by the U/M policy must correspond to the obligation in in solido expressed in Article 2091.
Civil Code Article 2091 provides:
There is an obligation in solido on the part of the debtors, when they are all obliged to the same thing, so that each may be compelled for the whole, and when the payment which is made by one of them, exonerates the others toward the creditor.
In Hoefly, this Court found that the tortfeasor and U/M carrier were both obligated, albeit independently, to repair the same damage to plaintiff, and were thus `obliged to the same thing.' This court further held that the tortfeasor and the uninsured motorist carrier each may be compelled for the whole, within the meaning of art. 2091, although the U/M carrier's liability is conditioned on the tortfeasors inability to make the plaintiff whole. In reaching this result, the opinion cited Civil Code art. 2092, which provides that obligations in solido may exist although one of the debtors is only conditionally bound. The court further concluded that the whole purpose of this element of solidarity was simply to prevent division among co-debtors. Thus construed, liability for the whole debt would mean only that a debtor who has been sued could not plead the benefit of sureties so that the creditor must divide the debt between them. Finally, this Court found that payment by any of the solidary debtors exonerated the others toward the plaintiffthus completing the final element of solidarity. 418 So.2d at 578-9.
The conclusions in Hoefly disregarded the plain language of C.C. art. 2091. The phrase "all obliged to the same thing" does not impose a separate requirement from the requirements that each debtor may be compelled for the whole and payment by one debtor exonerates the others. Such a construction is inconsistent with the language of Article 2091 and ignores the interrelationship among the clauses. Instead, the phrase "all obliged to the same thing" should be understood as the general definition of solidarity, which consists of two essential components. The article states that an obligation in solido exists "when they are all obliged to the same thing, so that each may be compelled for the whole and when the payment which is made by one of them, exonerates the others toward the creditor." The placement of the word "so" before the last two clauses indicates that those two requisites of solidarity are the effects of a debtor being obliged to the same thing. That is, a debtor cannot be liable for the same thing when he is not liable for the whole debt, and payment by him would not exonerate the other debtors.
There can be little doubt that the tortfeasor, his liability insurer and plaintiff's U/M carrier are all obliged, in differing degrees, to recompense plaintiff for the damages he has suffered. Nevertheless, they are not obliged to the same thing. The tortfeasor is bound for the entirety of the damages to plaintiff caused by his fault. The U/M carrier, on the other hand, is liable under its contract of insurance with plaintiff for a limited amount in the event that the tortfeasor is uninsured or underinsured. This distinction in the nature of the obligation owed by the U/M carrier prevents him from being liable for the whole debt, or from exonerating the debt toward the tortfeasor by payment to the plaintiff. Otherwise, a plaintiff would be placed in the anomalous position of having paid for uninsured motorist protection in case the tortfeasor's liability policy were *1282 inadequate, only to find that once the situation he contracted for has arisen, he must expressly reserve his rights against a party who was already contractually obligated to pay.
In Hoefly, the requirement that each of the debtors be liable for the whole debt was described as simply the inability of any co-debtor to plead division of the debt. Under this interpretation, an insurer could be considered liable for the whole debt, even though he was only liable up to the policy limits, because he could not plead division of the debt among the tortfeasor and other insurers. 418 So.2d 575, 578. This interpretation of Article 2091 disregards the whole basis of solidaritynamely, the concept of representation. "The solidary co-debtors represent each other in the interest of the creditor as to everything relating to the preservation and realization of the creditor's rights; thus, anything made with or by one of the debtors, is considered as made with or by all the other." Aubry & Rau, Cours de Droit Civil Francais, § 2896. If a solidary debtor is to represent the others, the plaintiff must be able to look to him for the full amount of the debt. Otherwise, each debtor would be liable only for his virile share and the distinction between joint and solidary obligations would be meaningless.
The tortfeasor satisfies this requisite of solidary liability, since he is liable for the full amount of damages caused by his negligence. By contrast, the liability insurer is not liable for the whole debt whenever the amount of damages suffered by plaintiff exceed the amount of the liability policy. Likewise, the U/M carrier cannot be liable for the whole debt where the damages are greater than the limits of plaintiff's U/M policy. The U/M carrier's liability is conditioned on the tortfeasor being uninsured or underinsured. Such a suspensive condition would not prevent the U/M carrier from being solidarily liable, since one of the solidary debtors may be "conditionally bound, whilst the engagement of the other is pure and simple ..." La.C.C. art. 2092. Nevertheless, once the suspensive condition is fulfilled, and the U/M carrier is called on to pay, the U/M carrier is only liable to the amount of the policy, and is not obliged to pay the damages which exceed that amount. Thus, the uninsured motorist insurer is not liable for the whole debt within the meaning of C.C. art. 2091.
Another aspect of solidarity absent in the relationship between the U/M carrier and the tortfeasor/liability insurer is the element that payment by one of the debtors exonerates the others. Payment of damages by the tortfeasor or the liability insurer would exonerate the other as well as the secondarily liable U/M carrier, to the extent that the debt has been reduced. However, payment by the U/M carrier would not prevent the plaintiff from later proceeding against the tortfeasor.
The uninsured motorist statute, R.S. 22:1406, contains no provision which would allow the U/M carrier to exercise the right to subrogation of the claims of its insured. Niemann v. Travelers Insurance Company, 368 So.2d 1003, 1006 (La.1979). Instead the U/M insurer is given only the limited right to be reimbursed out of the proceeds of any judgment or settlement its insured obtains "against any person or organization legally responsible" for the insured's injuries. La.R.S. 22:1406(D)(4). Thus, the tortfeasor is not exonerated by the payment of the U/M carrier.[1]
The arguments set forth in the majority opinion are neither relevant nor persuasive. Any arguments addressed to the wisdom or fairness of the express reservation should, and have been, directed to the legislature. Nevertheless, the prospective application of new Civil Code article 1803, which eliminates the express reservation requirement, are irrelevant to a consideration of facts which arose under the prior law. Likewise the argument that old Article 2203 was not *1283 a good law is without effect. It is an axiom of construction in our civil code that, when a law is clear and free of all ambiguity, the letter of it is not to be disregarded, under the pretext of pursuing its spirit. Both Articles 2091 and 2203 are clear in their meaning, and should be applied by this Court as written. The majority's argument that because a plaintiff is entitled to proceed against defendant after settling with his U/M carrier, an implied right exists to proceed against the U/M carrier after settling with the tortfeasor, is thoroughly unnecessary. A right need not be inferred when it is expressly provided for by contract. Clearly, the legislature was never concerned with the possibility of implying rights or creating exceptions to solidarity, since before Hoefly, there was no question that the U/M carrier was not solidarily liable with a tortfeasor, but was directly bound by virtue of his contractual relationship with plaintiff.
Because no solidary relationship exists between a tortfeasor and a U/M carrier, I can respectfully concur only in the result.
CALOGERO, Justice, concurring.
In Hoefly v. Government Employees Ins. Co., 418 So.2d 575 (La.1982), I dissented, believing that the La.C.C. art. 2091 requirement for solidarity was not met since the payment by the UMI carrier, one debtor, did not exonerate the tortfeasor, the other debtor, toward the creditor. This belief was based on my perception that La.R.S. 22:1406(D)(4) provided the UMI carrier a reimbursement right as opposed to a subrogation right from subsequent proceeds which the victim might receive from the tortfeasor. See Niemann v. Travelers Ins. Co., 368 So.2d 1003 (La.1979). La.R.S. 22:1406(D)(4) provides:
D. The following provisions shall govern the issuance of uninsured motorist coverage in this state.
(4) In the event of payment to any person under the coverage required by this section ..., the insurer making such payment shall, to the extent thereof, be entitled to the proceeds of any settlement or judgment resulting from the exercise of any rights of recovery of such person against any person or organization legally responsible for the bodily injury for which such payment is made....
Although this statute recognizes the insurer's right to reimbursement, it does not attempt to further delineate the relationships between the insurer, insured, and tortfeasor. Bond v. Commercial Union Assur. Co., 407 So.2d 401, 410 (La.1981). Such matters are to be regulated by the Civil Code or other statutes not inconsistent with the purpose of uninsured motorist coverage, "to afford protection to insureds when they become the innocent victims of the negligence of uninsured motorists." Id. at 409-10. This Court has concluded that the codal precepts governing subrogation, La.C.C. art. 2159, et seq., seem in complete accord with this purpose of promoting full recovery for damages by innocent automobile accident victims. Id. at 411. Despite my reservations about the Court's decision in Bond, it put to rest any question regarding the source of the UMI carrier's right to recover money paid to the victim. The Bond court decided that the UMI carrier's right was not simply to participate in the proceeds of any subsequent settlement or judgment but, coupled with policy language, was an effective subrogation right of the UMI carrier to the victim's tort claim against the tortfeasor.
Being prepared to accept Bond as the resolution of this Court on the question of the character of the right of the UMI carrier to recover money paid to its insured under its policy, I can no longer protest, as I did in Hoefly, that the tortfeasor and the UMI carrier are not solidary obligors. Under the Bond reasoning, there is no deficiency of solidarity under La.C.C. art. 2091 because payment by one of the debtors (UMI carrier) does indeed exonerate the other (the tortfeasor). If the UMI carrier is conventionally subrogated to the plaintiff's claim against the tortfeasor and thus can recover from the tortfeasor, then the payment to the victim by the UMI carrier does exonerate the tortfeasor insofar as the tortfeasor's debt to the victim is concerned, *1284 although the tortfeasor remains exposed to the claim of the subrogated UMI carrier.
NOTES
[*] Justice Blanche's argument, in his concurring opinion for overruling Hoefly is based on the false premises that under Civil Code article 2091 (1870), the phrase "obliged to the same thing" means that the solidary obligors must be liable for exactly the same amount and that the requirement that each of the obligors may be compelled for the whole means that each party is liable for the entirety of the debt. Both before and since Hoefly we have indicated that parties may be solidarily liable although their liability is in different amounts. American Bank and Trust Co. v. Blue Bird Restaurant & Lounge, Inc., 290 So.2d 302 (La.1974) (before Hoefly Narcise v. Illinois Central Gulf R. Co., 427 So.2d 1192 (La.1983) (after Hoefly); See also Johnson v. Fireman's Fund Ins. Co., 425 So.2d 224, 227-28 (La.1982). In Narcise we reaffirmed the determination in Hoefly that "obliged to the same thing" means simply that the obligors are obliged to repair the victim's damages, and that the requirement that each solidary obligor may be compelled to pay the whole means that neither obligor may plead the benefit of division.

The direct action statute, La.R.S. 22:655, expressly states that a liability insurer and its insured are solidarily liable. Yet, it is clear that a liability insurer is not liable beyond its policy limits and therefore that the liability insurer and the insured-tortfeasor are liable to the victim for different amounts. The implication of this point is clear. Since the legislature has stated that the relationship between a liability insurer and its insured is one of solidarity, even though they are not liable for the same amount, then liability as to the same and full amount of the debt must not be required for solidarity. Furthermore, it cannot be argued that solidarity under the direct action statute is any different from solidarity under the Civil Code since we have previously rejected distinctions between different kinds of solidarity. Foster v. Hampton, 381 So.2d 789 (La.1980).
[1] The U/M carrier and the insured may specifically contract for conventional subrogation of the insured's rights against the tortfeasor. Bond v. Commercial Union Assurance Co., 407 So.2d 401 (La.1981). Nevertheless, we must look to the legal rights established in 1406(D)(4) to determine whether the tortfeasor is exonerated within the meaning of C.C. art. 2091.