479 So.2d 677 (1985)
Austin CHATMAN, Jr., Plaintiff-Appellant,
v.
MID AMERICA INDEMNITY COMPANY, Defendant-Appellee.
No. 84-902.
Court of Appeal of Louisiana, Third Circuit.
December 11, 1985.
*678 Donald J. Richard, Opelousas, for plaintiff-appellant.
Brinkhaus, Dauzat & Falgoust, Jerry Falgoust, Opelousas, for defendant-appellee.
Before GUIDRY, DOUCET and LABORDE, JJ.
LABORDE, Judge.
Plaintiff, Austin Chatman, appeals a judgment dismissing with prejudice his suit against his uninsured motorist (UM) carrier, Mid-America Indemnity Company (Mid-America). The trial court held that Chatman released Mid-America by endorsing and cashing a draft, issued by the tortfeasor's liability insurer, without reserving his rights in accordance with former La. Civ.Code art. 2203. We reverse.
Chatman suffered serious injury when the motorcycle he was riding was struck by a truck. The truck driver's liability insurer, Protective Casualty Insurance Company (Protective Casualty), gave Chatman a $5,000.00 draft in payment of its policy limits for personal injury. Chatman endorsed and cashed the draft, the backside of which contained explicit language releasing Protective Casualty.
Claiming that his total damages exceeded Protective Casualty's policy limits, Chatman next made demand on Mid-America for $10,000.00, the limit of that company's liability under two different policies.
Mid-America resisted Chatman's demand, insisting that Chatman had released Protective Casualty without reserving his rights in accordance with former La.Civ. Code article 2203,[1] and that this action effected a release of his solidarily bound UM carrier.
The trial court based its decision in favor of Mid-America on the strength of article 2203 and the case of Hoefly v. Government Employees Insurance Company, 418 So.2d 575 (La.1982), in which our Supreme Court held that a UM carrier and a tortfeasor are, for interruption of prescription purposes, codebtors in solido. One effect of in solido liability was, when this matter went to trial, that the unqualified *679 release of one solidary co-obligor released all other solidary co-obligors. Former La. Civ.Code art. 2203. The trial judge very reasonably held that Chatman's unqualified release of the tortfeasor and her insurer effected, because of the Hoefly rule, a release of the solidarily bound UM carrier.
Our Supreme Court's ruling in Carona v. State Farm Insurance Company, 458 So.2d 1275 (La.1984), however, which was decided subsequent to the trial of the instant matter, compels the opposite result.
Carona continues the process initiated in Hoefly of defining the elements of a UM carrier's relationship with a tortfeasor and his liability insurer, and holds that while they are indeed codebtors in solido, the accident victim's claim against his UM insurer is not discharged merely because he neglects, after releasing the tortfeasor, to expressly reserve his right against the UM insurer in accordance with former Civil Code article 2203.[2]Carona was followed in Buras v. Carte, 463 So.2d 736 (La.App. 4th Cir.1985).
There is no evidence that Chatman otherwise discharged Mid-America. We therefore conclude that the judgment below must be reversed. Chatman has a viable cause of action against Mid-America.
It was conceded at trial that Chatman's UM coverage of $5,000.00 under his Motorcycle Insurance Policy was in effect at the time of the accident. It is unclear whether an additional policy held by Chatman for his automobile, also containing a UM clause for $5,000.00 for personal injuries, was also in effect. In either case, "stacking" two UM clauses from two different policies, under the circumstances present in this case, is not permitted under our law. LSA-R.S. 22:1406(D)(1)(c).
Chatman's recovery from Mid-America is therefore limited to $5000.00.
The record reveals that Chatman's personal damages, both general and special, exceed $20,000.00. He was paid only $5,000.00 by Protective Casualty for personal damages. We therefore reverse the judgment of the trial court and order Mid-America to pay Chatman $5,000.00, its policy limit under the UM clause. Chatman's claim for emotional damages and attorney fees, based on Mid-America's alleged arbitrary and capricious refusal to pay, is denied. All costs at trial and on appeal are taxed to the Mid-America Insurance Company.
REVERSED AND RENDERED.
NOTES
[1] Article 2203, in effect at all times relevant to this case, provided: "The remission or conventional discharge in favor of one of the codebtors in solido, discharges all the others, unless the creditor has expressly reserved his right against the latter." This article has now been repealed. See La.Civ.Code art. 1803.
[2] When this case was argued, counsel for Mid-America cited a Fifth Circuit decision which holds that, where the victim signs a liability insurer's form containing language releasing not only the tortfeasor and the insurer but also anyone else potentially liable, such broad language indicates more than a failure to reserve rightsit evinces an express intention to release (and does serve to release) the UM carrier. Migliore v. Traina, 474 So.2d 980, 983 (La.App. 5th Cir.1985).

Express releases of UM carriers are not barred by Carona. But the intermediate decisions which Carona reversed also involved broadly phrased release forms, that is, releases of "all other persons, firms and corporations from all demands." See Corona v. State Farm Insurance Co., 444 So.2d 763, 764 (La.App. 4th Cir.1983) and Decedue v. Government Empolyees Insurance Company, 441 So.2d 72, 73 (La. App. 5th Cir.1985). We decline to follow Migliore, even though Chatman did sign a broadly written release form in addition to endorsing the liability insurer's draft. Carona controls this case.