WILLIAMS, Judge,
dissenting.
I respectfully dissent.
The sole issue is whether the actions of Runyon and Hemmerich demonstrated the degree of gross negligence necessary to amount to a superseding, intervening cause which would hold them solely liable for John DiLeo’s death. The trial court correctly applied the Jagers v. Royal Indemnity Co., 276 So.2d 309 (La.1973), “interest analysis” test in determining Louisiana substantive law was applicable based on the significant connection five of the eight parties had with Louisiana.
In adopting a duty-risk analysis approach in highway obstruction cases, the Louisiana Supreme Court in Dixie outlined the appropriate standard of review and the applicability of intervening, superseding cause:
The thrust of this formulation of law (intervening, superseding cause) is toward relieving all but the last wrongdoer of liability to an innocent victim in torts involving intervening negligence. This restrictive doctrine finds little support in legal theory. We do not subscribe to the formulation as applied in this case.
The essence of the present inquiry is whether the risk and harm encountered by the plaintiff fall within the scope of protection of the statute. It is a hazard problem. Specifically, it involves a determination of whether the statutory duty of displaying signal flags and responsibility for protecting traffic were designed, at least in part, to afford protection to the class of claimant of which plaintiff is a member from the hazard of confused or inattentive drivers colliding with stationary vehicles on the highway.
Id. 136 So.2d at 304.
In Pierre v. Allstate Insurance Co., 257 La. 471, 242 So.2d 821 (1970), the court reaffirmed the approach articulated in Dixie on the issue of intervening negligence:
“Where causation in fact is a breach of a duty imposed to protect from the particu *1010 lar risk involved and this breach is an act of negligence per se, the mere fact that there is a later and intervening negligence actor who helped to create the particular risk involved will not absolve the first negligent actor from responsibility. This is not to say that intervening negligence can never supersede the original act of negligence so as to relieve the original actor from liability. Dixie Drive-It-Yourself recognized that the intervening negligence of another could relieve the original wrongdoer of liability, but it stated that such a theory should not be used to relieve all but the last wrongdoer from liability.” (Emphasis added)
Id. at 831.
It is clear, therefore, that while the theory of intervening, superseding cause has not been abolished, its use to relieve the original wrongdoer has been specifically limited by the Louisiana Supreme Court in highway obstruction cases.
Dixie and Pierre require a determination of the degree of negligence on the part of the approaching, colliding motorist, and when the actions of the approaching motorist exceed mere inattention or ordinary negligence and amount to gross negligence, the original wrongdoer is to be relieved of civil liability on the theory this constitutes an intervening, superceding cause. Laird v. Travelers Insurance Co., 263 La. 199, 267 So.2d 714 (1972); Rowe v. Travelers Insurance Co., 253 La. 659, 219 So.2d 486 (1969); Nelson v. Powers, 402 So.2d 129 (La.App. 1st Cir.1981); Shaw v. Travelers Insurance Co., 293 So.2d 568 (La.App.3d Cir.1974).
I cannot follow the majority opinion because it has erroneously applied an ordinary negligence standard rather than the gross negligence standard required to absolve the obstructing motorist of liability. I quote the majority opinion:
[t]his case does not fall within the Dixie Drive-it-Yourself line of cases, which excuses a motorist for failure to see an obstruction in the highway. This case involves a driver who is grossly negligent in not seeing what a reasonably careful and prudent driver could have seen and would have avoided, [emphasis added].
The concurring opinion applied the same erroneous standard through application of Florida law. I fail to see why the majority opinion applies the ordinary negligence standard when both parties argue throughout the entirety of their briefs for the correct proposition that gross negligence on the part of the approaching motorist is the only manner in which the obstructing motorist can be absolved of liability. The majority opinion is result oriented rather than a precise analysis of the law.
Furthermore, the facts of this case require that the court find Slade at the very least a joint tort feasor. It is easy to visualize the danger presented. A large truck is overturned and is lying, unlighted, perpendicular on an interstate highway. The driver is too intoxicated (.184 blood alcohol content) to perform the rudimentary task of placing signals to warn approaching motorists. In a rapid succession, two vehicles strike the truck’s undercarriage.
Pursuant to the majority result Slade is relieved of negligence because the second vehicle, somehow constituted a superced-ing, intervening cause. It seems as though the majority bases its decision on the fact the occupants of the Napolitano vehicle were able to walk away from the scene and the serious injury occurred only after Runyon and Hemmerich arrived. If this is the correct analysis, then the theory of joint tortfeasor’s in solido liability has been restricted to the point to where the plaintiff must show simultaneous injury. This case helps one plaintiff at the expense of a large majority of future claimants.
Officer Stephen Bevis, the Florida State Trooper who conducted the accident investigation, testified extensively on the issue of whether Hemmerich’s trailer brakes were operative at the time of the accident. On cross-examination he stated:
“Q. You testified earlier that the GMAC truck and trailer that was Vehicle *1011 No. 3 had wires connecting the truck and the trailer with regard to the braking system; is that correct?
A. Yes, ma’am.
Q. Would that mean these were broken at the time you did your investigation?
A. Yes ma’am.
Q. Do you have any way of knowing whether the wires were broken in the collision itself or if they were broken prior to the collision.
A. I have no way of knowing.
Q. So it’s just as feasible is it not that they were destroyed in the collision; is that right?
A. It is entirely possible, yes, ma’am.
Q. Do you have any way of knowing whether the braking system on the trailer was working or was it working prior to the collision?
A. I have no way of knowing.”
I find this testimony fails to offer a sufficient basis for the trier of fact to reach a legal conclusion that the brakes on Hemmerich’s trailer were inoperable at the time of the accident.
Officer Bevis also testified on the issue of whether the lights of Napolitano’s vehicle were operational at the time of the accident. He stated that when he reached the accident scene, he found the car’s light switch was on but the battery in Napolita-no’s vehicle was completely destroyed. Upon further examination, he was unable to ascertain whether this occurred in the initial collision with the Ryder truck or in the second collision involving Runyon and Hemmerich.
Plaintiffs’ claim is not conclusively substantiated by the testimony of the witnesses. Of the five witnesses who testified on the issue, only Nault positively stated the lights were operational after the initial collision. Napolitano and Kenner were unsure, and Runyon and Hemmerich testified all they saw was a “black wall” as they approached the accident scene.[1]
After consideration of the facts and the pertinent law presented in this case, I find that the plaintiffs have failed to show that Runyon was grossly negligent in his failure to avoid the accident or that the condition of Hemmerich’s trailer constituted gross negligence or contributed in any way to the accident.
Runyon was operating the vehicle well within the speed limit. The converted mobile home trailer he had in tow did not violate state law. That Runyon and Hemmerich travelled a great distance has no relevance to their negligence, unless fatigue was a factor in causing the accident. The record indicates Runyon was alert and quite capable of operating his vehicle.
There is insufficient evidence presented to establish that the trailer’s brakes were inoperable at the time of the accident. I have reached this conclusion not because I choose to disprove Officer Bevis’s testimony. I believe he was a credible witness, but Officer Bevis candidly admitted that he could not offer an expert opinion on this point. Furthermore, Officer Bevis’s testimony that Napolitano’s battery was destroyed when he reached the accident scene leads us to believe the car’s lighting system was inoperable when Runyon and Hemme-rich approached the Slade/Napolitano vehicles. It is more probable than not the greatest damage was caused by the initial collision of Napolitano striking the Slade vehicle at approximately 45-55 miles per hour.
I fail to find any evidence in the record which establishes an intervening, superseding cause because the circumstances do not indicate that Runyon would have collided with the Slade/Napolitano vehicles even if adequate warnings had been given, Nelson, Liberty Mutual, or that Runyon and Hemmerich’s actions amounted to a complete absence of due care, Laird.
*1012 While the acts and omissions of Runyon and Hemmerich do not constitute gross negligence sufficient to be an intervening, superseding cause, I do find that Runyon and Hemmerich were, nonetheless, negligent in combination with Slade in causing the harm to John DiLeo. On the other hand, I do not find Napolitano to be negligent because he encountered the very risk the statutory duty seeks to protect against.
Hemmerich allowed his employee to operate a truck with an improperly loaded trailer which may have adversely affected the truck’s maneuverability in attempting to avoid the accident. Although Slade owed a similar duty to Runyon and Hemmerich as did the defendant in Shaw v. Travelers Insurance Co., supra, which is factually similar to this case and cited by all parties, the trial court was correct in distinguishing Shaw because the operation of a vehicle which could not be safely maneuvered in the event of an emergency exceeded the exact scope of the particular risk which is mere confusion or inattention.
In finding Runyon and Hemmerich negligent, however, I cannot absolve Slade from responsibility, as he was the cause-in-fact which precipitated the entire chain of events. Dixie, Pierre, supra. Accordingly, I find that the negligence of Slade, Runyon and Hemmerich combined to produce John DiLeo’s death; and they are thus solidarily bound as joint tortfeasors.
UNINSURED MOTORIST COVERAGE
Runyon and Hemmerich were uninsured at the time of the accident and neither was a party to the lawsuit. The plaintiffs released Slade and his insurer, Union Fire, in return for $84,000.00 of the one million dollar coverage in effect, and reserved rights against the Uninsured Motorist carrier.
The issue presented is what rights do the DiLeos have against their Uninsured Motorist carrier (Colonial Penn) when uninsured tortfeasors (Runyon and Hemmerich) are solidarily liable with an insured tort-feasor (Slade) and they settle with and release the insured tortfeasor without exhausting the policy limits provided by the tortfeasor’s insurer (Union Fire).
I conclude that when the acts or omissions of uninsured or underinsured tort-feasors combine with those of an insured tortfeasor and the insured tortfeasor is covered by a valid and enforceable liability policy at the time of the accident, the plaintiff must exhaust the limits of all primary liability policies in effect before the Uninsured Motorist carrier is liable to his insured.
The tortfeasor and the Uninsured Motorist carrier are co-debtors in solido. Hoefly v. Government Employees Insurance Co., 418 So.2d 575 (La.1982); Carona v. State Farm Insurance, 458 So.2d 1275 (La.1984).
Although Hoefly creates solidarity, I find this has not altered the essential nature of Uninsured Motorist coverage which the court in Niemann v. Travelers Insurance Co., 368 So.2d 1003 (La.1979), found that the Uninsured Motorist carrier’s obligation to his insured arises either when the tort-feasor is uninsured or when the victim’s damages exceed the tortfeasor’s primary coverage. When an insured joint tort-feasor is a party to the lawsuit who has ample insurance to satisfy the plaintiff’s damages, Uninsured Motorist coverage does not apply simply because there exists an uninsured or underinsured tortfeasor.
The tortfeasor and the Uninsured Motorist carrier are obligated to indemnify the plaintiff for his damages, but the basis of their liability stems from different sources. As the court in Hoefly stated:
... A tortfeasor is obliged to repair the damage that he has wrongfully caused to the innocent automobile accident viction. La.C.C. art. 2315. Subject to conditions not granted the tortfeasor, the uninsured motorist carrier is independently obliged to repair the same damage. By effect of the uninsured motorist statute, La.R.S. 22:1406(D)(l)(a), and its insuring agreement, the plaintiffs’ uninsured motorist carrier is required to pay, subject to statutory and policy conditions, amounts which they are entitled under other provisions of law to recover as damages *1013 from owners or operators of uninsured or underinsured motor vehicles. By effect of law and the terms of the insuring agreement, therefore, both the uninsured motorist carrier and the tortfeasor are obliged to the same thing.
The creation of solidarity between the tortfeasor and the Uninsured Motorist carrier has not abrogated the contractual relationship that exists between the insured plaintiff and his Uninsured Motorist carrier.[2] Although each is obligated to do the same thing — fully recompense the plaintiff’s damages — the Uninsured Motorist carrier’s obligation arises in the event the plaintiff is unable to recover from the tortfeasor(s) because of the absence or insufficiency of insurance coverage.[3] The plaintiff’s Uninsured Motorist policy requires him to first exhaust by way of judgment or settlement all primary policies in effect at the time of the accident. When the plaintiff settles with and releases the insured tortfeasor for less than his policy limits, the Uninsured Motorist carrier is obligated under the terms of the Uninsured Motorist policy only if the plaintiff can prove his damages attributed to the uninsured or underinsured tortfeasor exceeds the released tortfeasor’s policy limits or cannot be satisfied by the remaining under-insured tortfeasor’s insurance.
The trial court established damages in the amount of $90,000.00. These damages along with the plaintiffs’ settlement with Union Fire for $84,000.00 do not exceed the one million dollar coverage in effect at the time of the accident. Accordingly, since Slade was covered by a valid and enforceable liability policy at the time of the accident, and plaintiffs failed to exhaust the policy limits provided in that policy, the court should find that Colonial Penn is not obligated to compensate the plaintiffs pursuant to the terms of the Uninsured Motorist provision.

. I reject plaintiffs’ argument that even if Napol-itano's lights were inoperable, Runyon was negligent because he should have detected the car’s taillight reflectors. Adoption of that approach would abrogate Slade's duty to place warnings and would shift liability to the approaching motorist.

. The Third Circuit treats the Uninsured Motorist carrier as a joint obligor and apparently has removed the bar requiring the plaintiff to exhaust the insured tortfeasor’s policy limits. Farnsworth v. Lumbermans Casualty Co., 442 So.2d 1340 (La.App.3d Cir.1983), overruling Gautreaux v. Pierre, 254 So.2d 476 (La.App.3d Cir.1971). If the court were to follow Farns-worth, though the court chose not to, the $84,-000.00 plaintiffs received in their settlement with Slade would have to be imputed to the total amount of the judgment. Fertitta v. Allstate Ins. Co., 462 So.2d 159 (La.1985). Thus, the judgment would be amended, after the credit, to $6,000.00; the difference between the $90,-000.00 judgment and the $84,000.00 settlement (excluding the $8,000.00 settlement with Napoli-tano who the court has found not liable to plaintiffs).

. In his concurring opinion in Carona v. State Farm Insurance Co., 458 So.2d 1275 (Ia.1984), Justice Blanche likens this to a "suspensive condition” which must be fulfilled before the Uninsured Motorist carrier is obligated.