525 So.2d 272 (1988)
Larry C. SUMRALL
v.
CROWN ZELLERBACH CORPORATION.
No. 87 CA 0294.
Court of Appeal of Louisiana, First Circuit.
April 19, 1988.
*273 Michael J. Paduda, Jr., Bogalusa, for Larry C. Sumrall.
Charles M. Hughes, Bogalusa, for Crown Zellerbach Corp.
Before WATKINS, CARTER and FOIL, JJ.
WATKINS, Judge.
This is a worker's compensation case. The defendant, Crown Zellerbach Corporation (Crown), appeals the trial court's judgment in favor of the plaintiff, Larry C. Sumrall, finding him permanently partially disabled.
The following facts were stipulated to at trial:
Larry C. Sumrall sustained an accidental injury to his right knee during the course and scope of his employment by Crown at its Bogalusa Mill on July 25, 1983. Mr. Sumrall's average weekly wage at the time of his accidental injury was six hundred dollars and seventy-six cents ($600.76); the then prevailing weekly compensation rate applicable to Mr. Sumrall's worker's compensation claim was two hundred and thirty dollars ($230.00) per week. Crown paid compensation benefits to Mr. Sumrall at the rate of two hundred thirty dollars ($230.00) per week for the period of July 25, 1983, the date of the accident, through July 7, 1984, totalling eleven thousand four hundred thirty-four dollars and twenty-nine cents ($11,434.29).
Crown paid all medical expenses incurred by Mr. Sumrall as a result of the July 25, 1983, injury, and there is no reluctance on the part of the defendant to honor and process any possible additional expenses so long as they are within the limitations and included under the worker's compensation law.
The trial court awarded the plaintiff a lump sum award of $10,703.21 for the permanent partial disability of his right leg. The trial court's decision was based on the written medical reports of three physicians as well as the lay testimony of the plaintiff and his wife.[1]
The issues presented on this appeal are whether the trial court erred in considering lay testimony in determining the plaintiffs percentage of disability under LSA-R.S. *274 23:1221(4)(q), and, if so, whether the medical evidence alone is sufficient to prove by a preponderance of the evidence that the plaintiff suffers from a disability quantified at greater than 50% as established by the American Medical Association Guides to the Evaluation of Permanent Impairment.
The defendant argues that the trial court erred in considering lay testimony in quantifying the percentage of disability the plaintiff suffers from. It is the defendant's contention that under the provisions of LSA-R.S. 23:1221(4)(q) an employee may recover for permanent partial disability only when his disability is quantified at greater than 50% and when this quantification is based solely on medical opinions which follow the American Medical Association Guides to the Evaluation of Permanent Impairment (hereafter AM A guidelines).
The relevant statute governing this case is the statute which existed on the date of the injury. Anderson v. Aetna Casualty & Surety Company, 505 So.2d 199 (La. App. 3d Cir.1987), writ denied, 511 So.2d 1152 (La.1987); Young v. Western Electric Co. Inc., 486 So.2d 962 (La.App. 1st Cir. 1986). Therefore, the award of permanent partial disability must be based on LSA-R. S. 23:1221(4) as amended by 1983 La.Acts, No. 1, Sec. 1, 1st Ex.Sess., effective July 1, 1983,[2] which provides in pertinent part:
(4) Permanent partial disability. In the following cases, compensation shall be solely for anatomical loss of use or amputation and shall be as follows:
* * * * * *
(h) For the loss of a leg, sixty-six and two-thirds percent of wages during one hundred seventy-five weeks.
* * * * * *
(q) No benefits shall be awarded or payable in this Paragraph unless anatomical loss of use or amputation, as provided in Subparagraphs (a) through (o) of this Paragraph or loss of physical function as provided in Subparagraph (p) of this Paragraph is greater than fifty percent as established in the American Medical Association Guides to the Evaluation of Permanent Impairment, copyright 1977, by the American Medical Association.
A recent decision of the Third Circuit, interpreting the provisions of LSA-R. S. 23:1221(4)(q), stated that "[s]ince the degree of impairment will be determined by medical experts, and since the statute dictates the effect of that determination on the benefits available to a claimant, legal evaluation of disability under this paragraph is foreclosed." Captain v. Sonnier Timber Co., 503 So.2d 689, 692 (La.App. 3d Cir.1987).[3] We generally agree with this interpretation and conclude that while the ultimate determination of disability is made by the court, the import of the clear language of LSA-R.S. 23:1221(4)(q) does not permit the use of lay testimony in determining the percentage of disability under LSA-R.S. 23:1221(4).
The plaintiff injured himself on July 25, 1983, when he slipped at work, severely twisting his leg and dislocating his knee cap. Following the accident he was taken to the emergency room at Riverside Medical Center where he was seen by Dr. Roger Blitz, an orthopedic surgeon. During the year following the accident, the plaintiff underwent seven surgical procedures for his knee injury, including a patellectomy (removal of his knee cap). He remained off work for over eleven months, during which time he was under the care of Dr. Blitz. He was released to go back to work on July 8, 1984, even though he was still experiencing problems with his knee.[4]
*275 In his report dated July 17, 1984, Dr. Blitz stated that the plaintiff was going to have a permanent disability of twenty (20%) percent. He described the disability as an anatomical disability relative to patellectomy with an excellent result. The report made no mention of whether the AMA guidelines were followed in making this evaluation.
On October 4, 1984, the plaintiff was examined by Dr. Stuart I. Philips and showed residual symptoms including pain and tenderness over the anterior tibial tubercle, weakness and numbness of the right foot and leg, and an inability to kneel. He further reported that the plaintiff was unable to run or do deep knee bends and that he walked with a limp favoring the right extremity. He also noted gross quadriceps muscle atrophy and weakness of the extensor hallicus longus along with diminished sensation along the lateral aspect of the foot and leg. A thermogram of both extremities was also performed which showed increased heat emanation from the anterior surface of the right knee and coolness of the lateral aspect of the leg on the right side as compared to the left along with the plantar aspect of the right foot on the medial side. Dr. Philips reported the thermogram as showing nerve injury to the peroneal nerve, which was an unavoidable complication of the surgery. Dr. Philips suggested that Mr. Sumrall ride a bike and discontinue weight lifting rehabilitation.
Mr. Sumrall was seen again by Dr. Philips on November 12, 1984. Dr. Philips in his report noted diminished symptoms since Mr. Sumrall began riding a bike and concluded that Mr. Sumrall had a 50% impairment of function of the involved knee, secondary to the effects of the accident. He stated that Mr. Sumrall is limited in doing such things as kneeling, climbing and running. He does not believe that he will have an increase in motor power of the knee joint and believes that he will not have a return of the function of the sensory nerves.
Mr. Sumrall returned to see Dr. Philips on February 5, 1985, showing increased symptoms due to increased activity. The doctor reassessed his disability at 55% loss of function of the extremity, due to the complex disability and the patient's vigorous past health.[5] No mention was made in any of Dr. Philips reports of whether the AMA guidelines were followed in making his evaluations.
After Dr. Philips reevaluated the plaintiff's injury as greater than a 50% disability, the defendant forwarded the claim to the Office of Worker's Compensation (OWC). The OWC appointed Dr. Gordon P. Nutik to examine the plaintiff and quantify his disability. The plaintiff was seen by Dr. Gordon P. Nutik on March 14, 1985. After examination and x-rays, the doctor stated in his report that he felt that the plaintiff would have a 20% residual disability involving the whole right lower extremity because of the right patellectomy. He included an additional 5% residual disability about the right lower extremity because of the peroneal nerve damage and only partial return of peroneal function. Dr. Nutik states in his report that his opinions were based on the manual for orthopedic surgeons published by the Academy of Orthopedic Surgeons as well as the AMA guidelines.
Because the evaluations of disability made by Dr. Philips and Dr. Blitz *276 did not indicate whether the AMA guidelines were followed, we find that they cannot be used in making a determination of whether an award can be made under LSA-R.S. 23:1221(4). However, because the statutory provision in question is new and has as yet received little if any interpretation or application, we consider it appropriate to remand this case to the trial court for the taking of additional evidence on whether the AMA guidelines were followed by Doctors Philips and Blitz. LSC.C.P. art. 2164. Following such determination, the trial court shall determine whether Mr. Sumrall is entitled to an award of permanent partial disability benefits considering only the medical opinions based upon the AMA guidelines.
Accordingly, the judgment of the trial court is vacated, and the case is remanded for further proceedings in accordance with the views expresseed herein. All costs are to await final disposition.
VACATED AND REMANDED.
NOTES
[1] Counsel for the plaintiff and the defendant agreed to file the reports of the physicians in lieu of deposition testimony, reserving the right to supplement the reports with depositions if at the conclusion of trial they deemed it necessary.
[2] We note an amendment to LSA-R.S. 23:1221(4)(q) which reduces the threshold from 50% to 25%. 1985 La.Acts No. 926, § 1, effective January 1986.
[3] We note a similar interpretation by implication in Breaux v. Ralph Crais Oil Corp., 485 So.2d 575 (La.App. 5th Cir.1986), where the court relied solely on medical testimony to deny an award under LSA-R.S. 23:1221(4)(q).
[4] The plaintiff testified that he continues to experience problems with his knee. He stated that he can no longer kneel, has trouble climbing, cannot carry heavy loads, has problems standing or sitting in one position too long and has pain when driving. When asked to describe his pain while at work he stated:

It's excruciating pain when I bump into something, or a lot of times I can just be walking along and my knee will buckle on me like somebody kicked me from behind and knocked my leg out from under me. That's severe. It's a decision I made to come back to work, but I don't know, you know, I can make the wrong move tomorrow and it will be end of my career. It's just something I don't know. So I had to make a decision to try and do it.
[5] Prior to Dr. Philips' reassessment of disability, counsel for the plaintiff sent a letter, dated February 4, 1985, to Dr. Philips inquiring whether the plaintiff would have an additional amount of disability due to the problems he complains of with his foot. The correspondence also pointed out that in order for the disability to be compensable under the new worker's compensation law the amount of disability must exceed 50%.