EDWARDS, Judge.
The plaintiff appeals a dismissal of her claim for worker’s compensation benefits. We affirm.
Plaintiff-appellant, Lillie Mae Dailey, was employed by the defendant, Pointe Coupee School Board, as a school lunchroom worker. She performed various duties, such as, sweeping, mopping, washing dishes, and preparing and serving food. While performing her duties on October 6,1982, Mrs. Dailey slipped in the lunchroom and twisted her back, but did not fall. At the time of the accident, Mrs. Dailey was 45 years old. Soon after, she began experiencing pain in her back. Mrs. Dailey reported the accident and, after seeing Dr. Kellerman, was paid worker’s compensation benefits. Based on medical reports, a reduction was made in the original benefits effective September 6, 1985.
Plaintiff sued her employer and its worker’s compensation insurer, Royal Insurance Company, to have her benefits increased and a disability determination made. Plaintiff also prayed for penalties and attorney’s fees.
Trial was held on November 2, 1987. The trial court found that the testimony did *56 not support a finding of disability and that the plaintiff had failed to prove that she was unable to perform her duties.
A synopsis of the medical history shows that plaintiff was referred by Dr. Keller-man to Dr. John Clifford, a neurological surgeon, who first saw her on November 12, 1982. Because plaintiff was still complaining of pain, Dr. Clifford hospitalized her from November 19, 1982, to December 3, 1982. The plaintiff was treated with traction and physical therapy. The doctor also scheduled a CT scan, a bone scan, and a myelogram, all of which were unremarkable.
Plaintiff returned to Dr. Clifford on January 7, 1983, but Dr. Clifford was unable to detect any objective reasons for plaintiff’s recurring symptoms. The doctor advised plaintiff to return to work, but to avoid heavy lifting for about a month.
Dr. Clifford saw the plaintiff again on January 31, 1983. He detected muscle spasm and a loss of lumbar curve. Dr. Clifford hospitalized plaintiff on February 1, 1983, and prescribed physical therapy. Objective tests failed to reveal any reason for plaintiff’s continued complaints of pain. Dr. William Fisher was consulted for a second opinion. He found no objective signs to explain the problem. Dr. Fisher reported that he found no spasm and no atrophy. He felt that plaintiff could return to work.
Plaintiff saw Dr. Clifford on February 14, 1983, and she reported her symptoms had greatly improved. He examined her and released her to return to work with the restriction of no heavy lifting for three weeks.
Mrs. Daily returned to work from late February of 1983 until May 10, 1983. She testified that her condition, at that time, was worsening, and she continued to experience pain. Her attorney sent her to Dr. Bruce Razza, an orthopedic surgeon, who first saw her on May 17, 1983. Dr. Razza examined and tested Mrs. Dailey. An x-ray did not show any disc herniation, but did indicate disc degeneration'with impingement of the nerve roots. From the tests Dr. Razza administered and Mrs. Dailey’s description of her problem, Dr. Razza concluded that she suffered from early spon-dylosis with sciatica and traumatic.[1] The doctor treated her with heat and anti-inflammatory drugs and prescribed a back brace. When plaintiff failed to respond to treatment, Dr. Razza hospitalized her on August 3, 1983. Dr. Razza felt surgery was indicated and on August 10 performed bilateral lumbar laminotomies, foraminoto-mies, and a fusion from L-4 to the sacrum with a left pelvic graft. Dr. Razza stated that his observations during surgery confirmed his diagnosis.
After surgery, Dr. Razza compared plaintiff’s condition to an arthritic complaint which cannot be cured. The aching could be lessened, but not eliminated.
By February of 1984, Dr. Razza prohibited lifting of objects greater than ten pounds and prohibited prolonged and repetitive standing, squatting, stooping, bending, climbing, or overhead activity. Dr. Razza felt plaintiff could return to light work with restrictions.
As of January, 1985, Dr. Razza assigned an anatomical disability of 30% and prohibited lifting of objects greater than ten pounds on a repetitive basis and lifting of objects greater than approximately forty pounds on an occasional basis. Prolonged and repetitive bending, stooping, squatting, standing, sitting, or overhead activity were still prohibited. However, because of plaintiff’s continued complaints of pain, Dr. Raz-za felt she should not return to work at that time. He did not feel the disability was permanent. In his deposition, Dr. Raz-za stated that there were no contraindications to an attempt by plaintiff to return to work. His concern was plaintiff's continued experiences of pain.
Dr. Clifford saw Mrs. Dailey again on April 1, 1985. He found no objective evi *57 dence for plaintiffs symptoms. He felt she could return to work, but prohibited lifting of anything over thirty-five (35) pounds. Dr. Clifford, in his deposition, stated that he agreed with Dr. Fisher’s opinion that if surgery was successful, no restrictions should be necessary.
Beverly Prestonback, a rehabilitation consultant employed by defendant,-Royal Insurance Company, testified at trial. Mrs. Prestonback, upon a review of the duties of a lunchroom worker, felt that Mrs. Dailey could perform those duties with the restrictions set by the doctors. There was testimony that the workers were to ask for help if pans were too heavy for them. The workers could control the weight of the cutlery and dish containers. The various other jobs were on a rotational basis and did not require prolonged and repetitive movements.
Mrs. Dailey testified that she last saw Dr. Razza in the fall of 1986. She stated that she still experienced great pain and had trouble even with housekeeping chores at home.
LSA-R.S. 23:1221, as it appeared before the 1983 legislative changes, is applicable to an injury that occurred in 1982. An injured worker is partially disabled when he is unable “to perform the duties in which he was customarily engaged when injured....” LSA-R.S. 23:1221(3). The determination of disability is a factual finding made by the trial court. Johnson v. Insurance Co. of North America, 454 So.2d 1113, 1117 (La.1984). The totality of the medical and lay evidence must be examined by the court in making the determination of disability. Simpson v. S.S. Kresge Co., 389 So.2d 65, 67 (La.1980); Batiste v. Pointe Coupee Constructors, Inc., 401 So.2d 1263, 1266 (La.App. 1st Cir.), cert. denied, 409 So.2d 615 (La.1981). Great weight is given to the trial court’s disability determination. The factual determination is not to be disturbed absent a finding of manifest error. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978); Canter v. Koehring Co., 283 So.2d 716 (La.1973); Woods v. Petroleum Helicopters, Inc., 415 So.2d 978 (La.App. 1st Cir.1982).
A review of the record does not show that the trial court was clearly wrong in finding that the plaintiff was not disabled under the statute.
In plaintiff-appellant’s brief, error was assigned to the trial court’s failure to award penalties and attorney’s fees for the insurer’s arbitrary and capricious reduction of benefits. Having determined that the trial court did not commit manifest error in a finding of no disability, it is not necessary to consider that assignment of error.
For the above and foregoing reasons, the judgment of the trial court is affirmed at plaintiff-appellant’s cost.
AFFIRMED.

. Dorland's Illustrated Medical Dictionary, 1458 (25th ed. 1974) defines spondylosis as ankylosis of a vertebral joint; also a general term for degenerative changes due to osteoarthritis. An-kylosis is defined as immobility and consolidation of a joint due to disease, injury, or surgical procedure. Borland’s, at 99.