FORET, Judge.
This is a worker’s compensation action filed by Harry Edwards against his employer, Belden Corporation, and its worker’s compensation insurance carrier, Liberty Mutual Insurance Company. The trial court rendered judgment in favor of plaintiff, finding him entitled to worker’s compensation benefits for the period beginning October 21, 1985 through January 6, 1987, subject to a credit for wages earned by plaintiff, as well as unemployment compensation benefits received during such period. Defendants have appealed the trial court’s judgment, and plaintiff has filed an answer to this appeal.
FACTS
Plaintiff was employed by Belden Corporation as a stranding machine operator at its wire mill in Jena. A stranding machine operator is required to lift spools of wire, weighing anywhere from 30 to 50 pounds, and place them on a stranding machine. The stranding machine then binds the wire taken from the smaller spools into one big wire which is rolled onto a larger spool also located on the stranding machine. The larger spool of wire, once filled, is then hoisted down from the machine and taken by mechanical means to a designated location at the plant.
Plaintiff states that on May 20, 1985, he felt pain in his low back while lifting one of the spools of wire to place it on the stranding machine. The pain worsened as plaintiff continued to work and he eventually informed his supervisor of the problem. Plaintiff was sent to the emergency room at LaSalle General Hospital, where he was seen by Dr. Robert Kendrick, the company physician. X-rays taken were negative and Dr. Kendrick determined that plaintiff had suffered a lumbar strain. Plaintiff returned to Dr. Kendrick on May 24, 1985, reporting that he was much improved. Employment records at Belden Corporation indicate that plaintiff missed no work because of this injury and continued to work, without incident, until September 4, 1985, at which time plaintiff once again complained of low back pain as he was picking up on two spools of wire. On this second occasion, plaintiff was again seen by Dr. Kendrick, who states that plaintiff complained of pain in the left elbow as well as low back pain. Dr. Kendrick’s diagnosis was tendonitis of the elbow and lumbar strain. Plaintiff then went to see Dr. Eugene Taylor, an orthopedic surgeon in Natchez, Mississippi, who diagnosed plaintiff as having a muscle strain. Dr. Taylor released plaintiff to return to work on September 23, 1985. Plaintiff returned to work on this date, worked approximately six hours and then informed his personnel manager, Terry Copeland, that he was unable to work because of back pain. Copeland then arranged for plaintiff to see Dr. Daniel Kingsley, an orthopedic surgeon practicing in Alexandria, Louisiana. Dr. Kingsley examined plaintiff on September 26, 1985 and on October 9, 1985. Dr. Kingsley states that all examination find *701 ings were negative and he advised plaintiff on the second visit that he should be able to return to his work activity. Plaintiff disagreed, stating that his back was still giving him problems and, accordingly, Dr. Kings-ley then arranged for plaintiff to undergo a CAT scan. The CAT scan, performed at St. Francis Cabrini Hospital on October 18, 1985, proved to be negative.
Thereafter, plaintiff went to see Dr. John Ferrell in June of 1986, who diagnosed plaintiff as having a musculoligamentous sprain. Additionally, plaintiff has been seen by a chiropractor at the Smalling-Humble Chiropractic Clinic from January 6, 1986 through January 6, 1987. Dr. Patrick Heine, one of the chiropractors who treated plaintiff, testified that plaintiff complained of back pain and x-rays revealed subluxation (misalignment of the vertebra) at L4-L5. Dr. Heine testified that he treated plaintiff on a regular basis and that x-rays taken on November 19, 1986 revealed that the subluxation had been corrected. However, Dr. Heine did not feel that plaintiff had fully recovered until he released plaintiff on January 6, 1987.
Disregarding plaintiffs short-lived attempts to return to his job, plaintiffs last day of work was September 4,1985. Plaintiff has been paid worker’s compensation benefits from September 4, 1985 through October 18, 1985. The trial court found that plaintiff was entitled to worker’s compensation benefits through January 6, 1987, subject to a credit for a period of 39 weeks in 1986, during which time plaintiff drew unemployment compensation benefits. The trial court also gave defendants credit for wages earned by plaintiff while working at a cotton gin in October of 1986.
In their appeal, defendants maintain that the trial court erred in finding that plaintiff was disabled through January 6, 1987. We agree that the medical testimony substantially favors the defendants. However, the trial court was clearly convinced as to the sincerity of the plaintiff’s complaints and was impressed by his repeated attempts to return to some sort of gainful work activity. Also, the fact that plaintiff saw fit to visit a chiropractor on numerous occasions from January 6, 1986 through January 6, 1987 is indicative of the fact that plaintiff must have been experiencing some degree of pain.
In a worker’s compensation case, the court must consider the totality of the evidence, medical and lay, in determining whether or not worker’s compensation benefits should be awarded. Dominick v. CNA Ins. Co., 497 So.2d 758 (La.App. 3 Cir.1986), writ denied, 501 So.2d 231 (La.1987). In the instant case, the trial court chose to believe plaintiff’s testimony, together with the corroborating testimony of plaintiff’s sister, as well as the chiropractor who treated him. Considering this evidence, we find no manifest error in the trial court’s determination that the plaintiff was totally disabled through September of 1986. However, we do find that the trial court committed manifest error in finding that plaintiff was disabled beyond that date. To begin with, Dr. Heine stated that x-rays taken in November of 1986 revealed that the subluxation in the area of L4-L5 had been corrected. Additionally, plaintiff conceded that he returned to work in October of 1986 at a cotton gin and admitted, on cross-examination, that from October of 1986 he did not miss any more work because of his back condition. Considering this, we find that plaintiff is only entitled to worker’s compensation benefits through September of 1986, it being our opinion that plaintiff was no longer disabled beyond that date.
Plaintiff has answered defendants’ appeal, raising several issues. Firstly, plaintiff contends that the trial court erred in finding that La.R.S.. 23:1225 provides for a week-for-week credit (regardless of the amount of unemployment compensation received) as opposed to a dollar-for-dollar credit. Prior to its amendment in 1986[1], R.S. 23:1225(B) provided as follows:
*702 “B. No compensation benefits shall be payable for temporary or permanent total disability or supplemental earnings benefits under this Chapter for any week in which the employee has received or is receiving unemployment compensation benefits, except as provided for in R.S. 23:1601(7)(b).”
R.S. 23:1601(7)(b), referred to in the above cited provision, does not apply in this case and thus, we must determine whether or not R.S. 23:1225(B) provides for a week-for-week credit as opposed to a dollar-for-dollar credit. We find that this provision clearly provides for a week-for-week credit. It specifically states that for any week in which the plaintiff receives unemployment compensation benefits, he shall not be entitled to receive worker’s compensation benefits, regardless of the amount of unemployment compensation benefits received. In fact, in Young v. State Farm Fire & Cas. Co., 511 So.2d 15 (La.App.3 Cir.1987), we had occasion to apply this provision and we held, in accordance with the express language of the statute, that the defendants were entitled to a credit for each week in which the plaintiff received unemployment compensation benefits. Thus, we held that for each week the plaintiff received unemployment compensation benefits, regardless of the amount, he was precluded from receiving worker's compensation benefits. In view of the above and foregoing, we find that plaintiffs argument that a dollar-for-dollar credit is provided for by R.S. 23:1225(B) is without merit.
Plaintiff also maintains, in his answer to appeal, that R.S. 23:1225(B) is unconstitutional if, in fact, it is interpreted to provide for a week-for-week credit for unemployment compensation benefits received as opposed to a dollar-for-dollar credit. Specifically, plaintiff contends that this provision is in violation of both the due process and equal protection clauses contained in the Louisiana Constitution.
With regard to the plaintiffs due process argument, Art. 1, § 2 of the Louisiana Constitution states that “No person shall be deprived of life, liberty, or property, except by due process of law.” The substantive guarantee of due process in the Federal and State Constitutions requires only that the legislation challenged have a rational relationship to a legitimate state interest. Accountants’ Ass’n. of Louisiana v. State, 533 So.2d 1251 (La.App. 4 Cir.1988). Injured employees have no reasonable expectation of receiving worker’s compensation benefits during the period of time in which they certify to the office of unemployment that they are capable of engaging in gainful employment activity. The State has a legitimate interest in discouraging employees from falsely certifying that they are capable of working in order to obtain unemployment compensation benefits rather than waiting on the proper disposition of a claim for worker’s compensation benefits. Unemployment compensation is not a substitute for worker’s compensation benefits and employees should not be allowed to use it as such. To simply allow a dollar-for-dollar credit would do little to discourage this practice as it would not penalize the employee for his misuse of the unemployment compensation system. Needless to say, the pecuniary interest of the State in limiting such abuse is substantial. Accordingly, we find that the challenged legislation does have a rational relationship to a legitimate State interest and thus, plaintiff’s due process argument is without merit.
Plaintiff also contends that our interpretation of R.S. 23:1225(B) is in violation of the equal protection clause of the Louisiana Constitution. Article 1, § 3 of the Louisiana Constitution provides as follows:
“§ 3. Right to Individual Dignity
Section 3. No person shall be denied the equal protection of the laws. No law shall discriminate against a person because of race or religious ideas, beliefs, or affiliations. No law shall arbitrarily, capriciously, or unreasonably discriminate against -a person because of birth, age, sex, culture, physical condition, or political ideas or affiliations. Slavery and involuntary servitude are prohibited, except in the latter ease as punishment for crime.”
*703 As for the proper analysis of an equal protection challenge, the court in Sibley v. Bd. of Sup’rs. of Louisiana State U., 477 So.2d 1094 (La.1985), on remand, 490 So.2d 307 (La.App. 1 Cir.1986), writ denied, 496 So.2d 325 (La.1986), our Supreme Court stated the following:
“Article I, Section 3 commands the courts to decline enforcement of a legislative classification of individuals in three different situations: (1) When the law classifies individuals by race or religious beliefs, it shall be repudiated completely; 20 (2) When the statute classifies persons on the basis of birth, age, sex, culture, physical condition, or political ideas or affiliations, its enforcement shall be refused unless the state or other advocate of the classification shows that the classification has a reasonable basis; (3) When the law classifies individuals on any other basis, it shall be rejected whenever a member of a disadvantaged class shows that it does not suitably further any appropriate state interest. With the adoption of these guarantees Louisiana moved from a position of having no equal protection clause to that of having three provisions going beyond the decisional law construing the Fourteenth Amendment.” (footnotes omitted)
Plaintiffs equal protection argument in this case falls into category 3 in that plaintiff does not fall into any of the groups described in the preceding two categories. Thus, it must be shown that the statute in question suitably furthers any appropriate state interest. For the reasons discussed hereinabove with regard to plaintiffs due process argument, we find that it does. We therefore reject plaintiffs argument that R.S. 23:1225(B) is in violation of the equal protection clause of our Constitution.[2]
Finally, plaintiff alleges, in his answer to appeal, that he is entitled to damages for frivolous appeal. We disagree. Considering the substantial medical evidence favoring defendants’ position in this case, we find that defendants were reasonable in appealing the trial court’s judgment, and we therefore deny plaintiff's claim for damages for frivolous appeal.
In view of the above and foregoing, the judgment of the trial court is amended to provide that plaintiff, Harry Edwards, is only entitled to worker’s compensation benefits through September 30, 1986. In all other respects and particulars, the judgment of the trial court is affirmed. Costs of this appeal are assessed one-half to plaintiff, Harry Edwards, and one-half to defendants-appellants, Liberty Mutual Insurance Company and Belden Corporation.
AFFIRMED IN PART, REVERSED IN PART, AND RENDERED.

. La.R.S. 23:1225(B) was amended by Acts 1985 No. 926, § 1, effective January 1, 1986. This amendment is not applicable to the facts of this case as plaintiffs injuries arose prior to the effective date thereof.

. The Attorney General has been notified of the pendency of this appeal pursuant to R.S. 13:4448 which states that the Attorney General shall be notified in any case in which the constitutionality of a statute of the State of Louisiana is being challenged on appeal. In response to this notice, the Attorney General’s office has filed a brief in these proceedings, requesting that the State Unemployment Compensation Fund be reimbursed for unemployment compensation benefits erroneously paid to plaintiff herein. In view of the fact that the State of Louisiana is not a party to these proceedings, we cannot consider such request on appeal.