558 So.2d 1257 (1990)
Huey DURBIN
v.
STATE FARM FIRE AND CASUALTY COMPANY.
No. CA 88 1964.
Court of Appeal of Louisiana, First Circuit.
February 21, 1990.
*1258 James Durbin, Denham Springs, for plaintiff.
Teresa C. Leyva, New Orleans, for defendant.
Before EDWARDS, LANIER and FOIL, JJ.
LANIER, Judge.
This action is a suit for worker's compensation benefits, medical expenses and statutory penalties. Suit was filed by Huey Durbin against State Farm Fire and Casualty Company (State Farm), his employer's worker's compensation insurer. The trial court found as fact that (1) Durbin was entitled to a minimum of 175 weeks of benefits for permanent partial disability as a result of a 45% permanent physical impairment to his left knee, (2) Durbin was temporarily totally disabled under the odd lot doctrine, (3) State Farm failed to provide Durbin with adequate rehabilitation services and (4) State Farm was arbitrary, capricious and without probable cause in terminating worker's compensation benefits. The trial court awarded Durbin weekly benefit payments of $210 from the date of injury through the termination of his disability subject to a credit to State Farm of $5,880, for compensation previously paid, and $4,725, for unemployment compensation benefits received by Durbin.[1] The trial court also awarded Durbin all past and future medical expenses, rehabilitation services, a 12% penalty on all due and unpaid compensation benefit payments, and a $5,000 attorney fee. State Farm took this suspensive appeal.

FACTS
Huey Durbin was an employee of Lamonica's Television, Inc. (Lamonica's) in Baton Rouge, East Baton Rouge Parish, Louisiana. He was employed as a television repairman and had worked for Lamonica's since 1971. His job required him to make service calls to customer's homes to repair televisions. If he could not repair the television at the customer's home, he would bring the television to Lamonica's shop. His work required that he move large televisions and do substantial bending, stooping and kneeling. He also had to carry tool and parts boxes weighing 50 lbs. or more.
On October 24, 1985, Durbin was getting up from behind a television set at a customer's home and heard and felt something in his left knee pop. He immediately felt severe pain in his left knee. Durbin returned to Lamonica's shop and reported the accident. He was sent by Lamonica's to Dr. J. Thomas Kilroy, an orthopedic surgeon.
After initially examining Durbin, Dr. Kilroy diagnosed degenerative arthrosis with a superimposed medial sprain of the knee. *1259 He decided to treat the knee conservatively with drugs and elevation. After several weeks without improvement, Dr. Kilroy performed an arthroscope for diagnostic purposes and found that Durbin had a tear of the posterior horn of the medial meniscus, chrondomalacia of the medial femoral condyle, the femoral groove and the lateral facet of the patella. Dr. Kilroy performed a medial meniscectomy, a medial femoral condyloplasty, a femoral groove condyloplasty, a patellaplasty and a lateral release. Two weeks after the operation, Durbin started a rehabilitation program of physical therapy.

EXTENT OF DISABILITY

(Assignments of error numbers 1 and 2)
State Farm contends the trial court erred in finding that Durbin was entitled to a minimum of 175 weeks of benefits for permanent partial disability as a result of a 45% permanent physical impairment to his left knee and in finding that Durbin was temporarily totally disabled under the odd lot doctrine.
At the time of Durbin's accident, temporary total disability was defined in La.R.S. 23:1221(1) as follows:
For injury producing temporary total disability of an employee to engage in any self-employment or gainful occupation for wages whether or not the same or a similar occupation as that in which the employee was customarily engaged when injured and whether or not an occupation for which the employee at the time of injury was particularly fitted by reason of education, training, or experience, sixty-six and two-thirds percent of wages during the period of such disability. (Emphasis added)
Recent judicial interpretations of La.R.S. 23:1221(1) have recognized the applicability of the odd lot doctrine and the working in pain doctrine to temporary total disability cases.[2]Marcotte v. Gulf Builders, Inc., 525 So.2d 208 (La.App. 1st Cir.), writ denied, 530 So.2d 88 (La.1988); Willie v. Balehi Marine, Inc., 525 So.2d 231 (La.App. 1st Cir.1988); DeGruy v. Pala, Inc., 525 So.2d 1124 (La.App. 1st Cir.), writ denied, 530 So.2d 568 (La.1988).
The Louisiana Supreme Court in Lattin v. Hica Corporation, 395 So.2d 690, 693-694 (La.1981), explained the odd lot doctrine as it applied to permanent and total disability as follows:
Under the odd lot doctrine, a claimant is considered totally disabled if his injury makes him an odd lot in the labor market, that is, one capable of obtaining employment periodically but one whose services are so limited in quality, dependability or quantity that a reasonably stable market for his services does not exist. An odd lot claimant need not be absolutely helpless to qualify for total disability. If the claimant can prove that his physical condition, mental capacity, education, training age or other factors combine to place him at a substantial disadvantage in the competitive labor market, he has made out a prima facie case for classification in the odd lot category. This satisfies his burden of proving that he should be awarded benefits for permanent and total disability. The employer or insurer must then show that some form of gainful occupation is regularly and continuously available to the employee within reasonable proximity to the employee's residence.

The odd lot doctrine is also applicable to substantial pain cases because a worker who, due to his injury, can function only with substantial pain or with the help of fellow workers may not be considered a particularly desirable employee. Thus, if a claimant's pain appreciably limits the types of work available to him and greatly diminishes his ability to compete in the labor market, he can be treated as an odd lot worker and be awarded total disability, unless there is proof that *1260 jobs are realistically available to him. On the other hand, if a worker cannot perform the same work that he did before his injury because it causes him substantial pain, but he has the mental capacity to perform other jobs which are available, he should be considered partially disabled. (Emphasis added; citations omitted)
See also Oster v. Wetzel Printing, Inc., 390 So.2d 1318 (La.1980).
The determination of disability is a factual finding made by the trial court. The totality of the medical and lay evidence must be examined by the court in making the determination of disability. Great weight is given to the trial court's disability determination, and it will not be disturbed absent a finding of manifest error. Dailey v. Royal Insurance Company, 551 So.2d 55 (La.App. 1st Cir.1989).
The only medical testimony of record concerning Durbin's disability is that of Dr. Kilroy. Dr. Kilroy testified that Durbin was admitted to the hospital for testing and surgery on November 19, 1985, and that on December 4, 1985, physical therapy was begun. On February 13, 1986, Dr. Kilroy released Durbin to return to light duty work with the restrictions of no bending, kneeling, stooping or squatting. At that time Dr. Kilroy felt that Durbin had not reached maximum medical recovery because he was gaining strength and motion in his knee. Dr. Kilroy testified that by May 5, 1986, Durbin had reached maximum medical recovery and released him with a 45% permanent physical impairment rating for his left knee. He restricted Durbin to sedentary work with no kneeling, squatting, stooping or climbing and no lifting over 10 lbs. He testified that Durbin could walk, sit, or stand without any restrictions. He testified that Durbin was physically unable to engage in his previous occupation. Dr. Kilroy testified that Durbin would have some pain associated with his knee, but that Durbin was experiencing pain in the left knee prior to the October 24, 1985 accident as a result of a 1977 injury to that knee.
Durbin testified that he cannot kneel, bend, squat, stoop or walk up stairs. He testified that he is unable to stand or walk for long periods of time without his knee and back hurting him. He stated that he walks with a limp and cannot do anything strenuous.
He stated that he looked for work in his community to meet the unemployment compensation requirements, but could not find employment. He stated he would work if he could find suitable employment.
At the time of the accident, Durbin was 54 years old and had worked as a television repairman for over fifteen years. He had a high school diploma and had graduated from radio and television school as a technician.
Durbin has made out a prima facie case for classification in the odd lot category; therefore, State Farm must show that some form of gainful occupation is regularly and continuously available to Durbin within reasonable proximity of his residence to defeat his claim for odd lot classification.
Jennifer Palmer, State Farm's expert in the field of vocational rehabilitation, testified that she contacted the fourteen businesses that Durbin contacted about employment and found that Durbin had filled out an application at only one of these businesses. She found that only one of these businesses was related to Durbin's previous employment. She interviewed Durbin at his attorney's office and discussed the possibility of retraining; he stated that he was too old for retraining. She testified that she reviewed Dr. Kilroy's medical records on Durbin to see his medical restrictions. Ms. Palmer testified that she felt Durbin could perform the following types of employment with his present education, training, and medical restrictions: electronic assembler, dispatcher of service crews, customer service representative, electronic parts clerk, production line assembler, surveillance system monitor, electrical testor, electrical motor assembler, small appliance repair, audio-video repair, electronics inspector and salesman of electronic equipment. She testified that she *1261 contacted several businesses which had these types of positions available or would have openings in the near future and which were willing to hire Durbin. These jobs paid from $3.75 to $7.00 per hour and were located in Baton Rouge where Durbin was previously employed by Lamonica's.
State Farm has shown that some form of gainful employment is regularly and continuously available to Durbin within reasonable proximity to his residence; therefore, they have rebutted Durbin's prima facie case for odd lot classification. Thus, Durbin has failed to prove by a preponderance of the evidence that he is temporarily totally disabled. The trial court's finding to the contrary is clearly wrong and is reversed.
Since Durbin is not entitled to temporary total disability benefits, we look next to State Farm's contention that the trial court erred in finding that Durbin was entitled to 175 weeks of benefits for permanent partial disability as a result of a 45% permanent physical impairment to his left knee.
The award of permanent partial disability is based on La.R.S. 23:1221(4) which at all times pertinent hereto[3] provided as follows:
(4) Permanent partial disability. In the following cases, compensation shall be solely for anatomical loss of use or amputation and shall be as follows:
. . . . .
(h) For the loss of a leg, sixty-six and two-thirds percent of wages during one hundred seventy-five weeks.
. . . . .
(q) No benefits shall be awarded or payable in this Paragraph unless anatomical loss of use or amputation, as provided in Subparagraphs (a) through (o) of this Paragraph or loss of physical function as provided in Subparagraph (p) of this Paragraph is greater than fifty percent as established in the American Medical Association Guides to the Evaluation of Permanent Impairment, copyright 1977, by the American Medical Association. (Emphasis added)
Dr. Kilroy found that Durbin had a 45% permanent physical impairment of his left knee. He testified that this impairment rating was of the left knee only and not of the entire left leg. He also testified that he found this disability rating using the Standard Textbook of Orthopedics for Rating Permanent Physical Impairment.
Since the trial court relied on Dr. Kilroy's assessment of disability and his assessment was not based on the American Medical Association (AMA) guidelines as required by La.R.S. 23:1221(4)(q), the trial court erred in finding Durbin permanently partially disabled. See Sumrall v. Crown Zellerbach Corporation, 525 So.2d 272 (La.App. 1st Cir.1988). Since the record does not contain any other evidence of the extent of Durbin's disability, we think it is appropriate to remand this case to the trial court for the taking of additional evidence as to the extent of Durbin's disability under the AMA guidelines. Following the taking of this additional evidence, the trial court shall determine whether Durbin is entitled to benefits considering the medical opinions based upon the AMA guidelines. If the trial court finds that Durbin is not entitled to permanent partial disability benefits, it shall take evidence and determine whether Durbin is entitled to supplemental earnings benefits under La.R.S. 23:1221(3).
These assignments of error have merit.[4]

REHABILITATION

(Assignment of error number 3)
State Farm contends that the trial court erred in finding that it had not complied *1262 with the provisions of La.R.S. 23:1226 dealing with rehabilitation.
La.R.S. 23:1226(A) and (B) provide the following:
A. When an employee has suffered an injury covered by this Chapter which precludes the employee from earning wages equal to wages earned prior to the injury, the employee shall be entitled to prompt rehabilitation services. The employer or insurer shall provide such injured employee with appropriate training and education for suitable gainful employment and may utilize programs provided by state and federal agencies for vocational education when conveniently available or may utilize any public or private agency cooperating with such state and federal agencies in the vocational rehabilitation of such injured employee. In the absence of such programs the employer or insurer shall provide vocational rehabilitation with available private agencies.
B. For the purposes of this Section only, "suitable gainful employment" means employment or self-employment, after rehabilitation, which is reasonably attainable and which offers an opportunity to restore the individual as soon as practical and nearly as possible to his average earnings at the time of the injury.
Ms. Palmer testified that State Farm contacted her and asked her to interview Durbin and see if there were any jobs available for him. She testified that she found jobs available for Durbin paying anywhere from $3.50 to $7.00 per hour. Durbin was making $8.00 per hour at Lamonica's prior to his injury. Ms. Palmer testified that she may be able to find Durbin a job with his restrictions paying $8.00 per hour.
Durbin felt that he was too old to be retrained or to go back to school. The trial court in its reasons for judgment stated that even though State Farm had attempted some rehabilitative services, they had not strictly complied with La.R.S. 23:1226 and, thus, ordered rehabilitation. After a thorough review of the record, we cannot say that the trial court was manifestly erroneous on this issue. The evidence shows that all of the jobs available to Durbin paid under $7.00 per hour. Since Durbin's injury precludes him from earning wages equal to the wages he earned prior to his injury, he is entitled rehabilitation.
This assignment of error is without merit.

STATUTORY PENALTIES

(Assignment of error number 4)
State Farm contends that the trial court erred in awarding statutory penalties.[5] Because we reversed the trial court's finding of temporary total disability, we find that the trial court erred in awarding statutory penalties against State Farm.

DECREE
For the foregoing reasons, the portions of the judgment of the trial court, awarding benefits for temporary total disability, and statutory penalties are reversed; and this action is remanded to the trial court for the specific purpose of determining if Durbin is entitled to benefits for permanent partial disability or supplemental earnings benefits, and, if so, whether statutory penalties are due. In all other respects, the judgment of the trial court is affirmed. The cost of this appeal is to be divided equally between the parties.
*1263 AFFIRMED IN PART; REVERSED AND REMANDED IN PART.
NOTES
[1] The trial court found that Durbin was entitled to benefits for permanent partial disability and for temporary total disability. Since Durbin is entitled to the more favorable of the two benefits, the trial court rendered judgment awarding Durbin benefits for temporary total disability. See Jacks v. Banister Pipelines America, 418 So.2d 524 (La.1982).
[2] 1989 La.Acts, No. 454 § 6, effective January 1, 1990, amended La.R.S. 23:1221(1) to legislatively overrule the jurisprudence allowing recovery for temporary total disability under the odd lot, sheltered employment and working in pain doctrines. This amendment is not applicable to this case, but represents the current public policy on this issue and can be considered by us in our decision. See Carona v. State Farm Insurance Company, 458 So.2d 1275 (La.1984).
[3] 1985 La.Acts, No. 926 § 1, effective January 1, 1986, amended La.R.S. 23:1221(4)(q) to reduce the threshold requirement from 50% to 25%. The accident in this case occurred on October 24, 1985, and thus the 50% threshold requirement is applicable. See Sumrall v. Crown Zellerbach Corporation, 525 So.2d 272 (La.App. 1st Cir.1988).
[4] In assignment of error number five, State Farm contends that the trial court erred in signing a judgment awarding a monetary credit for unemployment compensation benefits instead of a week-to-week credit. Since we reversed the trial court's finding of temporary total disability, we need not address this assignment of error. If the trial court on remand awards any benefits under La.R.S. 23:1221(3) or (4), it should consider the following for guidance in this area: La.R.S. 23:1225(B); Edwards v. Liberty Mutual Insurance Company, 552 So.2d 699 (La.App. 3rd Cir.1989), writ denied, 556 So.2d 61 (La.1990); Guidry v. Boh Brothers Construction Company, Inc., 545 So.2d 538 (La.App. 5th Cir.1989); Wills v. Solida Construction Co., 543 So.2d 1365 (La.App. 2nd Cir.1989); Young v. State Farm Fire & Casualty Company, 511 So.2d 15 (La.App. 3rd Cir.1987).
[5] Statutory penalties are comprised of a 12% additional payment, La.R.S. 23:1201(E), and a reasonable attorney fee, La.R.S. 23:1201.2.