765 So.2d 1072 (2000)
Rena Newman SUTTON
v.
Lee P. ONCALE, et al.
No. 99-CA-967.
Court of Appeal of Louisiana, Fifth Circuit.
March 29, 2000.
*1073 Richard M. Millet, J. Bradley Duhe, Millet Law Office, LaPlace, Louisiana, Counsel for Claimant-Appellant.
C. Gordon Johnson, Jr., James R. Nieset, Porteous, Hainkel, Johnson and Sarpy, New Orleans, Louisiana, Counsel for Defendants-Appellees.
Court Composed of Judges EDWARD A. DUFRESNE, Jr., SOL GOTHARD and CLARENCE E. McMANUS.
*1074 McMANUS, Judge.
This is an appeal by Rena Sutton, plaintiff-appellant, from a trial court judgment awarding her $40,535.81 in damages and finding that her uninsured/underinsured motorist insurer was not in bad faith and did not act arbitrarily and capriciously in refusing to tender an offer on her claim. Liability is not an issue on this appeal.

FACTS
On November 15, 1995, Ms. Sutton filed suit against defendants Lee Oncale, Mickey Oncale, tutor for his minor son Lee Oncale, and Prudential Property and Casualty Insurance Co. (hereafter Prudential), the automobile liability insurer for defendants Lee and Mickey Oncale. In her original petition, Ms. Sutton alleges that on November 15, 1994, she was traveling east on Louisiana Route 44 (River Road) when she stopped because the car in front of her was signaling that it was making a left hand turn. Lee Oncale, operating a vehicle owned by his father, Mickey Oncale, was proceeding east on River Road directly behind Ms. Sutton's vehicle. Mr. Oncale failed to notice that Ms. Sutton stopped, and crashed into her automobile. Ms. Sutton alleges that the force of the impact propelled her car into the vehicle in front of her. As a result of the accident, Ms. Sutton alleges that she sustained severe cervical and lumbar strain, herniated discs of the spinal column, various contusions, and nerve damage that resulted in disability.
On March 20, 1997, Ms. Sutton filed an Amending Petition adding USAA Casualty Insurance Company (hereafter USAA) as the uninsured/underinsured motorist insurer (hereafter UM/UIM) for the vehicle she occupied at the time of the crash. On March 24, 1998, Ms. Sutton filed a Second Amending Petition alleging that USAA refused to tender $76,455.63 when Ms. Sutton presented a settlement demand containing satisfactory proof of loss, and that USAA's refusal was arbitrary, capricious or without probable cause subjecting USAA to ten percent (10%) penalties and reasonable attorney's fees pursuant to LSA-R.S. 22:658. Ms. Sutton's Second Amending Petition further alleges that USAA breached its duties of good faith by demanding and receiving partial subrogation of $3,060.90 from Prudential for Ms. Sutton's medical bills when she had preference over USAA to those Prudential funds thereby subjecting USAA to penalties pursuant to LSA-R.S. 22:1220.
Ms. Sutton settled with the Lee and Mickey Oncale and Prudential for the remaining $21,939.91 of the Prudential policy's $25,000 liability limit. On March 31, 1998, the trial court signed an order dismissing Lee and Mickey Oncale and Prudential with prejudice from the suit while reserving Ms. Sutton's right to pursue USAA for legal interest on the obligation pursuant to the codal provision of LSA-C.C. art. 2925.
On May 4, 1998, Ms. Sutton filed a Third Supplemental and Amending Petition, further alleging that USAA had information at its disposal sufficient to contain "satisfactory proof of loss" to the UM/UIM proceeds and that USAA failed to properly investigate and/or adjust Ms. Sutton's UM/ UIM claim in violation of LSA-R.S. 22:1220(B)(1). On April 9, 1998, the parties agreed that the UM/UIM claims and the bad faith allegations would be severed and tried separately. On May 18, 1998, the trial court rendered judgment for Ms. Sutton finding that Mr. Lee Oncale's negligence was the sole proximate cause of the accident. The trial court awarded damages in these amounts:

General Damages:
Past and Present Pain, Suffering and
Loss of Enjoyment of Life $30,000.00
Future Pain and Suffering and Loss of
Enjoyment of Life $10,000.00
 __________
Subtotal General Damages $40,000.00
Special Damages:
Lost Wages: $ 152.00
Medical Bills $ 3,443.90
Future: 0
Subtotal Special Damages $ 3,595.90
 __________
Total Damages $43,595.90

The trial court found USAA liable to Ms. Sutton for damages in the amount of $43,595.90, *1075 subject to a credit of $25,000, representing the amount received by Ms. Sutton from Prudential, the liability carrier, plus legal interest thereon, court costs, and witness fees.
USAA filed a motion for a new trial on June 5, 1998. On July 2, 1998, the trial court granted the motion for new trial and amended its judgment, reducing the amount of recovery for special damages by $3,060.90, thereby granting USAA a credit for payment of Ms. Sutton's past medical bills. The trial court entered a judgment for $40,535.81, subject to a credit for the $25,000.00 for the limit of Prudential's liability policy. The trial court ordered that legal interest be awarded on the sum of $15,535.81 from November 15, 1995, the original date of judicial demand. The trial court further also awarded $900 in expert fees to Dr. Cesar Roca and Dr. Randall Poche and court costs.
On April 14, 1999, the trial court issued a judgment finding that USAA did not act in an arbitrary or capricious manner in refusing to tender a settlement offer to Ms. Sutton. In its reasons, the trial court noted that it had difficulty awarding damages to Ms. Sutton because, although it found Ms. Sutton credible, there was very little supporting medical evidence. The trial court also noted Ms. Sutton did not follow through with her medical treatment.
On April 23, 1999, Ms. Sutton filed a motion for new trial that was denied by the trial court on April 26, 1999. Ms. Sutton filed a timely appeal on the final judgment rendered on April 14, 1999. On appeal, Ms. Sutton alleges these trial court errors:
(1) the trial court erred in failing to award Ms. Sutton legal interest against USAA on the full amount of the judgment from the date of judicial demand;
(2) the trial court erred in giving USAA a credit for the $3,060.90 medical payment it made because USAA was reimbursed by Prudential;
(3) the trial court erred in failing to award Ms. Sutton bad faith penalties and attorney fees against USAA pursuant to the provisions of LSA-R.S. 22:658 and LSA-R.S. 22:1220 because USAA provided satisfactory proof of loss that she was underinsured at Prudential's liability limit of $25,000.00 as evidenced by the trial court's damage award, and
(4) the trial court erred in awarding only $40,000 in general damages.

LEGAL INTEREST
In her first specification of error, Ms. Sutton argues that the trial court erred in failing to award legal interest on the full amount of the judgment from the date of judicial demand because she reserved her rights against USAA to judicial interest on the entire judgment pursuant to LSA-C.C. art. 2925 when she released her claim against the tortfeasors and Prudential. Ms. Sutton reasons that the UM/UIM insurer is liable for legal interest because it is solidarily liable with the tortfeasor and its liability insurer.
USAA responds that the trial court correctly awarded interest only on the portion of the award that USAA is liable to pay; namely, the $15,535.81 that exceeds the underlying $25,000 tendered pursuant to Prudential's liability policy limit. USAA argues that LSA-R.S. 22:1406(D) provides that a UM/UIM carrier is entitled to a credit for the entire amount available to an insured from a tortfeasor and his primary liability policy, and that credit logically includes the interest on the amount available from a tortfeasor's liability policy.
In Carona v. State Farm Insurance Company, 458 So.2d 1275 (La.1984), the Supreme Court addressed the issue of whether a personal injury claimant, who failed to expressly reserve his rights to proceed against his UM/UIM carrier pursuant to former LSA-C.C. art. 2203, was barred from doing so by virtue of his settlement with the tortfeasor. LSA-C.C. art. 2203, which was replaced by LSA-C.C. *1076 art. 1803 in the revision of Louisiana obligations law and became effective on January 1, 1985, provided:
The remission or conventional discharge in favor of one of the codebtors in solido, discharges all the others, unless the creditor has expressly reserved his right against the latter.
In the latter case, a tortfeasor can not claim the debt without making a deduction of the part to whom he has made the remission.
The Supreme Court, in its ruling in Carona, supra, declared that, "[t]he object of the UM statute is to promote full recovery for damages by automobile accident victims.... The technical rule of LSA-C.C. art. 2203 serves as a barrier to full recovery by innocent accident victims, and thereby conflicts with the basic object of the UM legislation." Carona, 458 So.2d at 1278. The Supreme Court concluded that because the provisions of former LSA-C.C. art. 2203 were superseded by LSA-R.S. 22:1406(D)(4) of the UM/UIM statute, the plaintiff-victim, despite his release of the tortfeasor, nevertheless retained all of his rights as against his UM/ UIM carrier. Carona, 458 So.2d at 1279.
In Martin v. Champion Insurance Co., 95-0030 (La.6/30/95), 656 So.2d 991, 999 (La.1995), the Supreme Court pretermitted deciding whether the holding of Carona, supra, by extension, makes a UM/UIM insurer liable for the payment of judicial interest on the amount paid to the plaintiff by the tortfeasor's insurer. The Supreme Court reasoned that the plaintiff waived his rights to interest on the amount paid by the primary insurer through his failure to specifically reserve his rights pursuant LSA-C.C. art. 2925. LSA-C.C. art. 2925 states:
The release of the principal, without any reserve as to interest, raises the presumption that it also has been paid, and operates a release of it.
In the case at bar, Ms. Sutton reserved her right to interest pursuant to LSA-C.C. art. 2925. Therefore, we must now consider this issue of first impression and we find that the holding of Carona, supra, by extension, makes a UM/UIM insurer liable for the payment of judicial interest on the amount paid to the plaintiff by the tortfeasor's insurer when the plaintiff reserves her right to judicial interest pursuant LSA-C.C. art. 2925.
Generally, judgments in ex delicto cases bear legal interest from the date of judicial demand until paid. LSA-R.S. 13:4203 states:
Legal interest shall attach from the date of judicial demand, on all judgments, sounding in damages, "ex delicto", which may be rendered by any of the courts.
Liability and UM/UIM insurers owe interest on their policy limits from the date of judicial demand. Martin v. Champion Ins. Co., 95-0030 (La.6/30/95), 656 So.2d 991, 995; citing Ainsworth v. Government Employees Insurance Company, 433 So.2d 709 (La.1983). The tortfeasor, its liability insurer, and the UM/ UIM insurer are solidarily bound to repair the damage caused by the tortious conduct. Martin, 656 So.2d at 999. Therefore, a UM/UIM insurer is liable for the judicial interest on the amount paid to the plaintiff by the tortfeasor's insurer when the plaintiff elects to compromise his claim against one solidary obligor, and he either simultaneously asserts his claim to judicial interest, or expressly reserves his rights thereto pursuant to LSA-C.C. art. 2925.
In the case at bar, Ms. Sutton expressly reserved her right to the judicial interest for the entire judgment in the Motion and Order to Dismiss which was granted by the trial court on March 31, 1998. The Motion and Order to Dismiss explicitly states that "Rena Newman Sutton's claim for judicial interest on the Prudential/Oncale obligation against anyone other than Prudential, Mickey D. Oncale and Lee Oncale is hereby reserved; as are any and all other rights against any and all other persons *1077 and parties; especially USAA Insurance Company."
It is axiomatic that an insurance policy is a contract and it constitutes the law between the parties. Pareti v. Sentry Indemnity Company, 536 So.2d 417, 420 (La. 1988). The supplemental payment provision of Ms. Sutton's UM/UIM policy issued by USAA obligates USAA to pay the prejudgment interest on "that part of the judgment we pay." Ms. Sutton purchased UM/UIM coverage in the amount of $100,000 bodily injury per person, $300,000 per accident. Therefore, USAA is liable for pre-judgment interest to the extent of its policy limits up to $300,000.
USAA is clearly liable for judicial interest on the entire judgment from the date of judicial demand because the object of the UM/UIM statute is to promote full recovery of damages by automobile accident victims, the plaintiff expressly reserved her rights to judicial interest under LSA-C.C. art. 2925, and the amount of interest is well below USAA's policy limits of $300,000 per accident,

MEDICAL PAYMENT COVERAGE
Ms. Sutton also argues that the trial court erred in finding that USAA is entitled to a credit for the $3,060.90 it paid pursuant to the medical payment coverage of its policy because the trial court also granted USAA a $25,000 credit for the liability limits of the Prudential policy, even though Prudential only tendered the $21,939.10 remaining under Prudential's liability policy after reimbursing USAA pursuant to USAA's subrogation claim. USAA responds that the trial court correctly amended its judgment to provide USAA a credit for the $3,060.90 that had already been paid toward Ms. Sutton's medical bills. USAA further responds that to permit Ms. Sutton to recover $3,060.90 for medical bills that have already been paid would grant her a double recovery.
UM/UIM coverage is "excess" coverage, and a plaintiff has a right to receive from a UM/UIM insurer only that portion of his damages which exceeds the limits of the tortfeasor's liability insurance; even though the trial court might use the word "credit," its judgment does nothing more than determine the amount by which a plaintiff's total damages exceed the tortfeasor's liability insurance limits. White v. Patterson, 409 So.2d 290, 292 (La.App. 1 Cir.1981), writ denied, 412 So.2d 1110 (La. 1982). In determining the amount that a UM/UIM carrier must pay, the relevant amount is the amount of the tortfeasor's policy limits rather than the actual amount received by a plaintiff. Edmonds v. Shelter Mutual Insurance Co., 508 So.2d 211, 214 (La.App. 3 Cir.1987). As to the credit for medical payments, according to the jurisprudence, where a plaintiff's total damages do not exceed the UM/UIM policy limits, and the language of the policy allows such, the UM/UIM carrier is entitled to a credit for any amount which it has paid the plaintiff under the medical payments coverage. Barnes v. Allstate Insurance Co., 608 So.2d 1045, 1047 (La. App. 1 Cir.1992); White v. Patterson, 409 So.2d at 294.
In this case, USAA paid Ms. Sutton $3,060.90 for her medical bills under the medical payments coverage. USAA then asserted its rights to subrogation and received the same amount from Prudential, Mr. Oncale's liability insurer. Therefore, Prudential deducted the $3,060.90 payment to USAA from its $25,000 liability limit when it settled with Ms. Sutton for $21,939.10. Therefore, USAA was not entitled to the $3,060.90 credit because the total damages exceeded the tortfeasor's liability insurance limits and USAA received the $25,000.00 credit for the liability limits of the Prudential policy.

ENTITLEMENT TO PENALTIES AND ATTORNEY'S FEES
Ms. Sutton argues that USAA was arbitrary and capricious when it failed to tender *1078 $76,455.63 within thirty days after she presented "satisfactory proof of loss" that her damages exceeded the $25,000 liability limit of the Prudential policy. Ms. Sutton further argues that USAA acted in bad faith when it notified Prudential of its intent to exercise its right to subrogation on the $3,060.90 amount paid under its medical payment coverage before Ms. Sutton, the insured, was compensated for her injuries. USAA responds that it did not arbitrarily and capriciously fail to tender a settlement offer because there was insufficient medical testimony as to the causation of Ms. Sutton's injuries. USAA further responds that Ms. Sutton's medical bills were reimbursed by Prudential on November 3, 1995, before it was aware that the matter would be litigated.
The determination as to whether an insurer's handling of a claim is arbitrary and capricious is one of fact which should not be disturbed in the absence of manifest error. B. Bennett Mfg. Co., Inc. v. S. Carolina Ins. Co., 96-731 (La.App. 5 Cir.3/25/97), 692 So.2d 1258, 1270-71. Both LSA-R.S. 22:658 and LSA-R.S. 22:1220, are penal statutes which must be strictly construed, Perkins v. Guaranty National Insurance Co., 95-229 (La. App 3 Cir.11/2/95), 667 So.2d 559, 565, writ denied, 96-0759 (La.5/31/96), 673 So.2d 1033. Statutes LSA-R.S. 22:658[1] and LSA-R.S. 22:1220[2] are similar in that *1079 each provides for penalty awards when an insurer has acted arbitrarily, capriciously or without probable cause in failing to timely settle a claim. One primary difference between the two statutes is that under LSA-R.S. 22:658, penalties are automatic once the finding of arbitrary and capricious is made, while under LSA-R.S. 22:1220, penalties are discretionary. This interpretation is based on the language of LSA-R.S. 22:658 which states that when the insurer is found to be arbitrary and capricious, the insurer shall be subject to penalties and attorney fees. On the other hand, LSA-R.S. 22:1220 states the claimant may be awarded penalties in the event the insurer is found to have acted arbitrarily and capriciously.
An insurer's refusal to pay is not arbitrary, capricious, or without probable cause where serious issues regarding the appellant's right to recovery are raised. In the present case, the only question before us is whether the UM/UIM insurer had reasonable cause to contest plaintiffs claim that her damages exceeded the limits of the tortfeasor's liability policy.
For a party to prevail under LSA-R.S. 22:658, the claimant must establish that the insurer received satisfactory proof of loss, failed to pay the claim within the applicable statutory period, and that the failure to timely tender a reasonable amount was arbitrary and capricious. Khaled v. Windham, 94-2171(La.App. 1 Cir.6/23/95); 657 So.2d 672, 679. A "satisfactory proof of loss" within the meaning of LSA-R.S. 22:658 is that which is sufficient to fully apprize the insurer of the insured's claim. McDill v. Utica Mutual Insurance Company, 475 So.2d 1085, 1089 (La.1985); Khaled, 657 So.2d at 679. To establish a "satisfactory proof of loss," the insured must establish that the insurer received sufficient facts which fully apprize the insurer that (1) the owner or operator of the other vehicle involved in the accident was uninsured or underinsured; (2) that he was at fault; (3) that such fault gave rise to damages; and (4) establish the extent of those damages. McDill, 475 So.2d at 1089.
There is no question that USAA knew that Lee Oncale was at fault for the accident. However, the record does reflect that there was a valid issue as to the extent of Ms. Sutton's damages and whether Prudential's liability policy was sufficient to compensate her. In its reasons for judgment dated April 14, 1999, the trial court stated that "it had great difficulty in determining plaintiffs damages" because it faced the dilemma of awarding damages to an injured plaintiff, who, other than her credibility offered minimal medical evidence elaborating on her disc injury and its ramifications. The court further noted that "there was an unexplained lack of medical follow-through subsequent to the initial diagnosis three years preceding trial (other than her annual employment physical) and that plaintiff only lost one day of wages." The trial court stressed that "both causation and damage portions of its judgment turned overwhelmingly on the credibility of plaintiff rather than any medical evidence, which was sorely lacking."
The record substantiates the trial court's findings. Dr. Cesar Roca, an expert in orthopedics and orthopedic surgery, treated Ms. Sutton for her back injuries. Dr. Roca testified that he treated Ms. Sutton on June 23, 1995, June 30, 1995, and July 28, 1995. Dr. Roca testified that Ms. Sutton told him that she was a 35 year old woman who was involved in a motor vehicle accident on November 15, 1994. Ms. Sutton also told Dr. Roca that she did not lose consciousness and that there was no immediate low back pain after the accident. The physical examination of her back revealed no spasm and the neurological *1080 exam appeared normal. The radiographs of the lumbar region were normal with some relative narrowing of the L5-S1. The MRI of the lumbar spine revealed that she had an asymmetric bulge on the right side of the L5-S1 level with a mild central bulge at the L4-L5 level suggesting either an asymmetrical annular bulge or a right sided disc herniation.
Dr. Roca opined that Ms. Sutton might have a nerve impingement and diagnosed her with disc herniation at the L5-S1. On June 30, 1995, Dr. Roca recommended that Ms. Sutton return to work, but avoid driving the forklift for about four weeks and avoid lifting objects over thirty pounds. Dr. Roca related that Ms. Sutton stated she was well when he saw her on July 28, 1995, and she denied any pain to the back or lower extremities. The physical exam revealed no spasms and no atrophy to the back or to the lower extremities and full range of motion to the lumbar spine. Since Ms. Sutton still had some weakness in the L5-S1 disc level, Dr. Roca recommended that she should avoid heavy lifting, and avoid bouncing in the forklift if at all possible. However, he released her to work without restrictions.
Dr. Roca testified that it is difficult for him to state that there is a reasonable probability of causal connection between the November 15, 1994 car wreck and Ms. Sutton's herniated disc because he did not see an MRI of her spine before the accident. The MRI showed a chronic problem that an accident can exacerbate, however, the MRI also demonstrated a normal degenerative process at the L4-5 and at the L5-S1 level.
Since Ms. Sutton first complained of neck pain, Dr. Roca opined that the symptom is indicative of a whiplash mechanism which does not affect the lower back. Ms. Sutton told Dr. Roca that the neck pain disappeared shortly after the accident. Dr. Roca opined that Ms. Sutton's condition is caused by her bouncing on the forklift because the axial compression is more consistent with the finding of a bulge.
Dr. Randall Carl Poche is a medical doctor who is an expert in family practice. He became the plant physician for NALCO in 1993. On December 19, 1994, Dr. Poche treated Ms. Sutton for her injuries from the November 15, 1999 automobile accident. Ms. Sutton complained of persistent low back pain, neck discomfort, and posterior headaches. Dr. Poche found that Ms. Sutton had some tenderness across her lower lumbar area, and that the pain was radiating into her right thigh. Dr. Poche opined that Ms. Sutton suffered from cervical and lumbar whiplash. On January 6, 1995, Dr. Poche saw Ms. Sutton and recommended physical therapy since she did not seem to be improving. In 1996 and 1997, he found Ms. Sutton fit for any duty at NALCO. Dr. Poche related her symptoms to the accident, but did not find them debilitating to the extent that he had to limit her duties at work.
Ms. Sutton testified that she suffered injury to her lower back from the impact of the crash on November 15, 1994. She testified that the impact broke her car seat and jolted her forward, and her seat belt restrained her from flying through the window. Ms. Sutton began experiencing pain in her neck immediately after the accident and the record reflects that she was treated at Rivers Parishes Hospital after the crash for neck pain. She testified that she has had to curtail her activities because of lower back pain, which she never suffered before the accident. Dr. Poche ordered physical therapy and she was treated on five different occasions. She consulted with Dr. Roca when the pain continued to be a problem for her.
Whether a refusal to pay a claim is arbitrary, capricious, or without probable cause hinges on the facts known to the insurer at the time of its refusal to pay the claim. Genusa v. Robert, 98-449 (La.App. 5 Cir.10/14/98), 720 So.2d 166, 172-173. Based on the above testimony and medical documents, it is clear that USAA did not *1081 act in bad faith pursuant to LSA-R.S. 22:658 by refusing to tender payment under the UM/UIM policy. USAA was not arbitrary nor capricious in the manner in which it conducted its evaluation of Ms. Sutton's claim or in failing to offer a settlement. As the trial court noted, there was little medical evidence supporting Ms. Sutton's claim for damages exceeding $25,000.
An insured's burden under LSA-R.S. 22:1220 is great and sanctions should be imposed against the insurer only where the facts negate probable cause for nonpayment, and plaintiff proves that the insurer's actions or failure to act were not justified. Delahoussaye v. Madere, 98-1033 (La.App. 5 Cir.4/14/99), 733 So.2d 679, 689-690. From the evidence in the record, it is apparent that USAA did not act in bad faith. Upon receiving Ms. Sutton's medical bills, it immediately paid them under its medical payment coverage. The record reflects that USAA had no actual proof that Ms. Sutton's damages exceeded $25,000 and that this matter would be in litigation when USAA notified Prudential of its intent to assert its subrogation rights. Further, the medical evidence supports USAA's position that Ms. Sutton would be more than adequately compensated by the remainder of Prudential's liability policy especially since Dr. Roca testified that Ms. Sutton's injuries were caused by working on the forklift, not the accident. We find that the trial court properly determined that USAA was not in bad faith and did not act arbitrarily or capriciously in handling Ms. Sutton's claim.

GENERAL DAMAGE AWARD
In her last specification of error, Ms. Sutton alleges that her general damage award is too low. The standard of review of general damage awards is whether the trial court abused its great discretion in fixing the award. In Youn v, Maritime Overseas Corp., 623 So.2d 1257 (La.1993), the Supreme Court reiterated the long standing rule that an appellate court is not to decide what it considers an appropriate award, but rather to review the exercise of discretion by the trier of fact. In this inquiry, consideration must be given to the particular injuries and their effects on the particular circumstances of the particular plaintiff. Youn, 623 So.2d at 1261. It is only when the appellate court determines, for articulable reasons distinct to the case at hand, that the trier of fact abused its much discretion, that it may set aside the award as either too high or too low. Youn, 623 So.2d at 1261.
In the present case, it is clear Ms. Sutton did suffer an injury to her disc after this accident, however, she did not require surgery nor did she require significant medical treatment, indicating that her pain was not severe. While these damages may be on the low side, we find that the trial court did not abuse its discretion in awarding Ms. Sutton $40,000 in general damages.
For the foregoing reasons, the part of the trial court's judgment insofar as it grants USAA a credit of $3060.90 and awards interest only on USAA's portion of the award is reversed. In all other respects, the trial court judgment is affirmed.
AFFIRMED IN PART; REVERSED IN PART; AND RENDERED.
NOTES
[1] LSA-R.S. 22:658 provides, inter alia:

A. (1) All insurers issuing any type of contract, other than those specified in R.S. 22:656, R.S. 22:657, and Chapter 10 of Title 23 of the Louisiana Revised Statutes of 1950, shall pay the amount of any claim due any insured within thirty days after receipt of satisfactory proofs of loss from the insured or any party in interest.
* * *
(3) Except in the case of catastrophic loss, the insurer shall initiate loss adjustment of a property damage claim and of a claim for reasonable medical expenses within fourteen days after notification of loss by the claimant. In the case of catastrophic loss, the insurer shall initiate loss adjustment of a property damage claim within thirty days after notification of loss by the claimant. Failure to comply with the provisions of this Paragraph shall subject the insurer to the penalties provided in R.S. 22:1220.
(4) All insurers shall make a written offer to settle any property damage claim within thirty days after receipt of satisfactory proofs of loss of that claim.
B. (1) Failure to make such payment within thirty days after receipt of such satisfactory written proofs and demand therefor, as provided in R.S. 22:658(A)(1), or within thirty days after written agreement or settlement as provided in R.S. 22:658(A)(2) when such failure is found to be arbitrary, capricious, or without probable cause, shall subject the insurer to a penalty, in addition to the amount of the loss, of ten percent damages on the amount found to be due from the insurer to the insured, or one thousand dollars, whichever is greater, payable to the insured, or to any of said employees, together with all reasonable attorney fees for the prosecution and collection of such loss, or in the event a partial payment or tender has been made, ten percent of the difference between the amount paid or tendered and the amount found to be due and all reasonable attorney fees for the prosecution and collection of such amount.
[2] LSA-R.S. 22:1220 provides, in pertinent part:

A. An insurer, including but not limited to a foreign line and surplus line insurer, owes to his insured a duty of good faith and fair dealing. The insurer has an affirmative duty to adjust claims fairly and promptly and to make a reasonable effort to settle claims with the insured or the claimant, or both. Any insurer who breaches these duties shall be liable for any damages sustained as a result of the breach.
B. Any one of the following acts, if knowingly committed or performed by an insurer, constitutes a breach of the insurer's duties imposed in Subsection A:
(1) Misrepresenting pertinent facts or insurance policy provisions relating to any coverages at issue.
(5) Failing to pay the amount of any claim due any person insured by the contract within sixty days after receipt of satisfactory proof of loss from the claimant when such failure is arbitrary, capricious, or without probable cause.
C. In addition to any general or special damages to which a claimant is entitled for breach of the imposed duty, the claimant may be awarded penalties assessed against the insurer in an amount not to exceed two times the damages sustained or five thousand dollars, whichever is greater. Such penalties, if awarded, shall not be used by the insurer in computing either past or prospective loss experience for the purpose of setting rates or making rate filings.