846 So.2d 986 (2003)
Laura L. COX,
v.
Frank JULIAN, Jr. and Allstate Insurance Company.
No. 03-CA-107.
Court of Appeal of Louisiana, Fifth Circuit.
May 28, 2003.
Rehearing Granted June 4, 2003.
*987 Charles A. Kronlage, Jr., Kronlage & Kronlage, APLC, New Orleans, LA, for Plaintiff/Appellant.
Donald R. Klotz, Jr., Frank J. Romaguera, IV, Law Offices of Harold G. Toscano, New Orleans, LA, for Defendants/Appellees.
Panel composed of Judges THOMAS F. DALEY, SUSAN M. CHEHARDY, and CLARENCE E. MCMANUS.
THOMAS F. DALEY, Judge.
The plaintiff, Laura Cox, has appealed the jury award for damages she suffered in an automobile accident. For the reasons that follow, we affirm the judgment and amend the past pain and suffering award.
FACTS:
On December 13, 1999, Ms. Cox was struck from the rear by a car driven by the defendant, Frank Julian, and insured by the defendant, Allstate Insurance Company (Allstate). The force of the impact propelled her into the car in front of her, totally demolishing her car. She settled with Allstate in its capacity as the tortfeasor's insurer, and proceeded to trial against Allstate in its capacity as her uninsured motorist carrier.
Ms. Cox testified that the accident occurred as she was starting to apply the brakes for a red light. She saw the defendant's car approaching at a high rate of speed and saw there was nowhere for her to go. The impact caused her to be thrown back, forward, and back again, pushing her seat into a lying position. She immediately felt pain in the back of her head. She was treated in the emergency room at Baptist Hospital on the day of the accident. She complained of pain in the back of her head and was prescribed Flexaril. A few days later she felt confused and disoriented. She returned to the emergency room and was told to stop taking the Flexaril.
Ms. Cox testified that a few days after the accident, she was feeling worse, rather than better, so she sought treatment from Dr. Michael Haydel, who had previously treated her for sciatica. She was experiencing pain in her neck and low back. Ms. Cox testified that Dr. Haydel gave her an ice pack to use several times per day on these areas. She explained that when she *988 visited his office, he put electrodes in her back and manipulated her back. Ms. Cox testified that Dr. Haydel referred her to an orthopedist, Dr. Scheufler, a neurosurgeon, Dr. Bartholomew, and a neurologist, Dr. Shamsnia. Ms. Cox explained that she underwent an MRI as well as an electromyelogram (EMG). She testified that the EMG was painful.
Ms. Cox explained that her job involves sitting at a desk and that usually by mid afternoon, she is having discomfort. At the time of trial, she continued to experience episodes of pain and was still being treated by Dr. Haydel. Ms. Cox testified that she had not missed any work as a result of the accident because she scheduled her doctor's appointments after work.
Dr. Michael Haydel was accepted by the court as an expert in chiropractic medicine. Dr. Haydel testified that he first treated Ms. Cox in August 1999 for complaints of pain up her left leg to her buttocks. She did not complain of neck or back pain at that time. He treated her for that condition until November 22, 1999. Dr. Haydel testified that Ms. Cox returned to his office on December 21, 1999 complaining of pain in her head, pain and stiffness in her neck, and low back pain since an automobile accident on December 13, 1999. Dr. Haydel testified that there were muscle spasms in her back and neck and decreased range of motion in her low back. Dr. Haydel diagnosed cervical sprain/strain, lumbar sprain/strain, headache, and muscle spasm. Dr. Haydel explained that he treated these conditions with joint mobilization and a muscle stimulator. He referred her to Dr. Scheufler, a rehabilitation physician for medication. Ms. Cox continued to complain of pain, so he referred her to a neurosurgeon, Dr. Bartholomew, and then to Dr. Shamshia to perform further tests. Dr. Haydel testified that the EMG and nerve conduction study showed damage to the nerve root between the fifth and sixth cervical vertebrae. Dr. Haydel explained that this correlated with the herniation of the disc at this level seen on the MRI.
Dr. Haydel testified that the purpose of his treatment was to alleviate Ms. Cox's pain, but that he would never be able to correct her disc problem. He explained that she will need continued treatment in the future, but he did not opine as to how long she would need treatment.
Dr. Daniel Johnson, Jr. was accepted by the court as an expert in diagnostic radiology. He testified that he performed an MRI on Ms. Cox on December 8, 2000 that showed a herniation between the fifth and sixth cervical vertebrae. He explained that on the film this disc was overlapping the back of the upper portion of the sixth cervical vertebrae extending between the ligament that runs along the back of the vertebral body. He testified that there was stenosis in the area where the nerve root comes through that caused by "fairly good-size spurring." Dr. Johnson explained that spurring is abnormal.
Dr. Morteza Shamsnia, a neurologist, testified that she performed an EMG and nerve conduction studies on Ms. Cox. Dr. Shamsnia testified that these studies indicated that Ms. Cox had nerve damage or a pinched nerve between the fifth and sixth cervical vertebrae. She explained that this test is an objective test and the patient has no control over the results. Dr. Shamsnia testified that the results of the tests were consistent with Ms. Cox's complaints of pain in the neck spreading across both shoulders. She explained that patients with this type of nerve damage have chronic pain for an indefinite period of time. Dr. Shamsnia agreed with Dr. Johnson's interpretation of the MRI of depicting a herniated disc.
*989 On cross-examination, Dr. Shamsnia was questioned about the tracings from these tests. She explained that the report shows all of the numbers from the tests, so there is no need for the tracings. She admitted that the report from these tests was her interpretation of the tracings.
Dr. David Aiken, an orthopedic surgeon, testified on behalf of Allstate. Dr. Aiken testified that he examined Ms. Cox on July 19, 2001. He testified that there were no abnormal findings on his examination and that she had no tenderness, no spasms, and full range of motion in her neck and back. Dr. Aiken explained that her reflexes were normal, another indication that there is no pinched nerve. Dr. Aiken went on to explain that Ms. Cox's did not have a herniated disc in her neck, rather, she had a bulging disc. He explained that as the disc degenerates as a normal part of the aging process, the bones begin to slide across each other and a bone grows across the disc space. As a result of the aging process, Ms. Cox had developed a bone spur at the lower border of the sixth cervical vertebrae. He testified that this is a normal finding in a 51 year old woman and that it took five to ten years to develop. He testified that there were no findings on the MRI that he would directly relate to this accident.
With regard to the EMG and nerve conduction studies, Dr. Aiken explained that these tests produce a reading on an oscilloscope that can be printed out. Because this was not printed out, he was unable to see the actual readings and could not agree with Dr. Shamsnia's findings. Dr. Aiken testified that his physical examination did not indicate any nerve damage.
Dr. Aiken further testified that when a person gets in an accident such as this, it is not uncommon to suffer neck and back pain, and that in the majority of people this pain lasts for three to six months. He testified that there was nothing in his exam, her x-rays, or the MRI to explain why she continued to have pain.
Medical records and medical bills were introduced into evidence that corroborated the testimony of the physicians and plaintiff.
At the conclusion of trial, the jury made the following awards:

Medical expenses from December 13, 1999 to date: $ 12,306.00
Medical expenses for future care: $ 3,000.00
Physical pain and suffering from December 13, 1999 to date: $ 7,000.00
Future physical and mental pain, suffering, and anguish: $ 0

Plaintiff then filed a Motion for JNOV, New Trial, or Additur. The trial judge amended the award to include $5,000.00 for future pain and suffering. It is from this judgment that plaintiff has appealed.
DISCUSSION:
On appeal, the plaintiff contends the trial court erred in failing to grant her Motion for JNOV or New Trial. Plaintiff argues that the trial judge erred as a matter of law when he awarded plaintiff future pain and suffering using the lowest amount possible. Plaintiff contends that the trial judge should have conducted a de novo review of the evidence when the trial court determined that the jury erred in not awarding damages for future pain and suffering. Plaintiff also argues in the alternative that the jury's verdict was manifestly erroneous.
Defendant responds that the jury verdict was not inconsistent and is supported by the testimony. Defendant contends that plaintiff was adequately compensated for her injuries.
*990 After the jury verdict, plaintiff filed a Motion for JNOV, New Trial, or Additur. The trial judge stated that he was denying the Motion for JNOV, denying the Motion for New Trial, and granting an Additur of $5,000.00.
Code of Civil Procedure article 1814 provides:
If the trial court is of the opinion that the verdict is so excessive or inadequate that a new trial should be granted for that reason only, it may indicate to the party or his attorney within what time he may enter a remittitur or additur. This remittitur or additur is to be entered only with the consent of the plaintiff or the defendant as the case may be, as an alternative to a new trial, and is to be entered only if the issue of quantum is clearly and fairly separable from other issues in the case. If a remittitur or additur is entered, then the court shall reform the jury verdict or judgment in accordance therewith.
The record does not indicate that the defendant agreed to or objected to the additur. However, this is a devolutive appeal and defendant has already paid plaintiff the judgment amount which included the $5,000.00 additur. Additionally, on appeal, defendant contends the amounts awarded are reasonable. Thus, we find the defendant tacitly agreed to additur. See Accardo v. Cenac, 1997-2320 (La.App. 1 Cir. 11/6/98), 722 So.2d 302.
The jury awarded Ms. Cox damages for future medical care, but failed to award damages for future pain and suffering. When a jury finds a plaintiff suffered injuries in an accident, awards special damages, but fails to award general damages, the verdict is inconsistent. Cheramie v. Horst, 93-1168 (La.App. 1 Cir. 5/20/94), 637 So.2d 720. An inconsistent verdict is a legal error. Id. A new trial is a correct option to correct a legal error. Id. Additur may be granted as an alternative to a new trial. C.C.P. art. 1814. Thus, we find the trial judge did not err in granting plaintiff's Motion for Additur.
Having determined that the grant of additur was proper, we must now determine if the trial court awarded a reasonable amount. Once it is determined that additur is proper, the amount awarded on additur should be raised only to the lowest reasonable amount. Accardo v. Cenac, supra. In reviewing an amount granted on additur, the court shall consider the reasonableness of the jury verdict. C.C.P. art. 2083(B).
Dr. Shamsnia testified that patients with the type of nerve damage that Ms. Cox has experience chronic pain for an indefinite period of time. Dr. Haydel testified that plaintiff will require future treatment, but he did not state how long treatment would be required. At the time of trial, plaintiff had been under the care of Dr. Haydel for just over two years. Her medical expenses from Dr. Haydel for this time period totaled $8,009.00. This amount also included an examination by another physician in Dr. Haydel's office. Dr. Haydel's office records indicate that just prior to the time of trial, plaintiff was visiting his office twice a month at a cost of $120.00 per visit. The jury's award of $3,000.00 for future medical will allow just over another year of treatment at this same rate. We find the amount awarded by the jury for future medical care to be reasonable. Ms. Cox testified that she continues to have episodes of pain and discomfort. Dr. Shamsnia testified that patients with the type of nerve damage sustained by Ms. Cox have chronic pain for an indefinite period of time. Given this evidence, we find the trial judge's award of $5,000.00 for future pain and suffering to be appropriate.
*991 We now address plaintiff's argument regarding the jury's award for past pain and suffering.
The standard for appellate review of general damage awards is whether the trial court abused its great discretion in fixing the award. In Youn v. Maritime Overseas Corp., 623 So.2d 1257 (La.1993), the Supreme Court upheld the longstanding rule that an appellate court is not to decide what it considers an appropriate award, but rather to review the exercise of discretion by the trier of fact, considering the particular injuries and their effects on the particular circumstances of the particular plaintiff. Id. Only when the appellate court determines that the trier of fact abused its much discretion, may the award be set aside as either too high or too low. Id.
Plaintiff was awarded $12,306.00 the full amount of her medical expenses from the date of the accident to the date of trial. In light of this award, we must now review the record to determine if the $7,000.00 award for physical and mental pain, suffering, and anguish from the date of the accident to the date of trial was adequate.
Plaintiff testified the accident created a great deal of fear and anxiety for her. Her car was hit from behind and pushed into a car in front of her. The force of the rear impact completely demolished her late model midsize car. The pictures entered into evidence show that portions of the trunk were completely pushed into the back seat. The pictures indicate the entire front of the car was severely damaged. The force of the impact broke the front seat of the car. After the accident, she was treated at the emergency room. Plaintiff testified and the emergency room records reflect that plaintiff had pain and tightening in her neck. She was prescribed two medications, one of which was Flexaril.
Plaintiff testified that she had no previous neck or back pain. Since the accident, she continues to have neck and back pain. She explained that her job involves sitting at a desk and by mid-afternoon she experiences discomfort due to her injury. She testified that the pain comes and goes and that Dr. Haydel's treatments help the pain.
Dr. Haydel's medical records indicate that plaintiff presented to his office approximately two weeks after the accident and stated that the neck pain began the same day as the accident, while the back pain began a day or two later. She filled out a form indicating that the pain was constant, rating it an 8 on a 10 point scale. A report from an examination by Dr. Scheufler on December 27, 1999 indicates that plaintiff's pain was still constant and 8 out of 10 in severity. Dr. Scheufler found plaintiff had significant tenderness in the cervical and lumbar areas; she diagnosed plaintiff as having both cervical and lumbar strain with spasm. She prescribed medication for inflammation and pain.
Dr. Haydel's medical records indicate that plaintiff visited his office three times per week for almost four months after the accident. In March of 2000, Dr. Haydel referred plaintiff to Dr. Bartholomew because of continued complaints of pain. Dr. Bartholomew prescribed medication and told her to continue treatment with Dr. Haydel. Over the remainder of 2000, plaintiff continued to return to Dr. Haydel on a regular basis. In December 2000, Dr. Haydel referred plaintiff to Dr. Johnson for an MRI. Dr. Johnson testified that this MRI showed a herniated cervical disc. While Dr. Aiken, who performed an IME and who testified for the defendant, disagreed that there was a herniated disc, he agreed that there was narrowing in that *992 area and testified that there was a bulging disc. In January 2001, Dr. Haydel referred plaintiff to Dr. Shamsnia who performed tests on the nerves of plaintiff's arms. Dr. Shamsnia testified that these tests, which were objective, indicated plaintiff had damage to the nerves at the level of the herniated disc. Plaintiff continued under the care of Dr. Haydel throughout 2001. At the time of trial, February 4, 2002, Dr. Haydel testified that plaintiff remained under his care. There was no testimony regarding possible future surgery for plaintiff's condition.
This trial took place over two years after this accident. Plaintiff testified that she continued to suffer from pain and discomfort. Her physicians testified that she would continue to suffer from pain and will require future medical care. The medical records indicate that plaintiff sought treatment for her neck pain immediately after the accident and continued to seek treatment on a regular basis. She followed Dr. Haydel's advice and sought opinions from other physicians and under went further diagnostic testing. After reviewing the testimony and medical records, we find the jury abused its discretion in awarding only $7,000.00 for pain, suffering, and anguish from the date of the accident to the time of trial. Thus, we must increase the award to the lowest award that was within the jury's discretion.
In Hopstetter v. Nichols, 98-185 (La. App. 5 Cir. 7/28/98), 716 So.2d 458, writ denied, 98-2288 (La.11/13/98), 731 So.2d 263, the plaintiff suffered injuries to her neck in an auto accident. Diagnostic testing showed a degenerative condition with a possible disc herniation. This court increased the jury's $5,000.00 general damage award to $30,000.00, finding that this was the lowest reasonable award for this plaintiff who suffered an injury that had not resolved two years after the accident and which will require future treatment for pain management.
In Sutton v. Oncale 99-967 (La.App. 5 Cir. 3/29/00), 765 So.2d 1072, this court found that the plaintiff did suffer an injury to her disc, however she did not require surgery. While affirming the $40,000.00 general damage award and acknowledging that this award was low, this court stated that plaintiff did not "require significant medical treatment, indicating that her pain was not severe." Id. At 1081.
None of the physicians who testified on plaintiff's behalf discussed future surgery. While Ms. Cox testified that she continues to experience pain and discomfort, there was no testimony that the pain was debilitating or that the pain prohibited her from participating in any activities. Based on our review of the effect of this injury on this particular plaintiff and our review of the jurisprudence we find that $30,000.00 is the lowest general damage award that is within the jury's discretion.
CONCLUSION:
For the foregoing reasons, the judgment of the trial court is amended to increase the damage award for physical and mental pain, suffering, and anguish from the date of the accident to the date of trial to $30,000.00. In all other respects, the judgment of the trial court is affirmed.
AFFIRMED AS AMENDED.
REHEARING GRANTED
Rehearing is granted for the limited purposes of assessing costs of the appeal against the defendant/appellee, Allstate Insurance Company.